UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------
UNITED STATES OF AMERICA,

            -vs-                           12-CR-56S

STEVEN A. KNIGHTON,

               Defendant.
--------------------------------------


        Proceedings held before the

     Honorable William M. Skretny, Buffalo

     Courtroom, Robert H. Jackson Courthouse,

     2 Niagara Square, Buffalo, New York, on

     December 2, 2014.


     APPEARANCES:

     THOMAS S. DUSZKIEWICZ,
     Assistant United States Attorney,
     Appearing for the United States.

     ANGELO MUSITANO, ESQ.,
     Appearing for Defendant.

     Michelle L. McLaughlin, RPR,
     Official Reporter,
     U.S.D.C. W.D.N.Y.

1              THE CLERK:  Criminal case 12-56S, United

2      States of America versus Steven Knighton.

3              THE COURT:  Okay.  The attorneys and

4      Steven Knighton, defendant, is present.

5          Are there any preliminary issues, Mr. Musitano?

6              MR. MUSITANO:  Judge, Mr. Duszkiewicz and

7      I discussed a stipulation yesterday, and I asked

8      Mr. Duszkiewicz to remove three words, which he

9      did.  Unfortunately, I missed one word that I'm

10     asking him to take out, and it's the word

11     "initially" in paragraph 1, Judge.  That's my only

12     request.

13             THE COURT:  Your reputation as a wordsmith

14     is tarnished, Mr. Musitano.

15             MR. MUSITANO:  Thank you very much, Judge.

16             THE COURT:  All right.  By the way,

17     Mr. Knighton, is that your sweater or

18     Mr. Musitano's?

19             THE DEFENDANT:  He let me borrow it.

20             THE COURT:  All right.  Government's ready

21     to proceed?

22             MR. DUSZKIEWICZ:  Yes, Judge.  If we'd

23     have known about the "initially," we probably could

24     have had that taken care of already.  But we'll

25     attend to that.

1              THE COURT:  Mr. Musitano, defense is

2    ready?

3              MR. MUSITANO:  We are, Judge.

4              THE COURT:  Mr. Knighton, you're ready?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Jury is being brought up -- or

7    prospective jurors are being brought up.  It's

8    anonymous by number.  They will be seated as per

9    their numbers, and then we will proceed.

10             MR. DUSZKIEWICZ:  The stipulation as to

11   the chemist and the laboratory submissions, so --

12             THE CLERK:  Does that decrease the number

13   of witnesses?

14             MR. DUSZKIEWICZ:  Yes.

15             THE CLERK:  What's the number of witnesses

16   then?

17             MR. DUSZKIEWICZ:  I think we listed 30.

18             THE COURT:  I'll go through -- there's a

19   large number of witnesses, potential.  I'll just

20   mention them as names that may pop up during the

21   course of the prosecution, and we'll from there.

22             MR. DUSZKIEWICZ:  The pronunciation of the

23   person who's being stipulated to is Vimislik.  She

24   is listed as number 15, Judge.

25             THE COURT:  Okay.  Thank you.

1              (Prospective jurors seated.)

2              THE COURT:  Okay.  I think we're about

3      ready.  Miss Labuzzetta, if you would call the case

4      please, once again, now that the prospective jurors

5      are seated.

6              THE CLERK:  Criminal case 12-56S, United

7      States of America versus Steven Knighton.

8              THE COURT:  Okay.  And I'll explain a

9      little bit more to all of you this morning what

10     that really means in terms of the type of case and

11     what the case is about to some extent, if you are

12     selected as jurors in this case.  Good morning.

13             THE JURY:  Good morning.

14             THE COURT:  My name is William Skretny,

15     probably saw from the sign.  I'm the chief district

16     judge here in the Western District of New York,

17     which you are all a part of, and we'll talk about

18     that a little bit, and we'll get right into the

19     matter of jury selection.

20         I hope to have a jury selected this morning.  I

21     will do the majority of the questioning.  And I

22     think that makes it easier on just about everybody.

23     All of you represent the cross-section of our

24     community.  And we hope to make this a very

25     positive experience.  I know it impinges on your

1    daily routine a little bit.  For the most part,

2    that sometimes is a bit of a problem, especially

3    during a month like December.  But just so you

4    know, I arranged to have the weather the way it is

5    today, okay, so that that wouldn't negatively

6    impact on your desire to become a juror in this

7    particular case.

8        And we will move expeditiously through things.

9    If everything goes according to plan, roughly in

10   two or three hours we should have our jury.  I'll

11   work you hard so we get through that process.

12       We use a system that's called the struck jury

13   system.  And that proceeds in rounds of the

14   exercise of challenges to those of you that have

15   the designated numbers.  I know it's a little bit

16   difficult to get used to the numbers that you have.

17   Some numbers are brighter and bigger than others.

18   Like number 26, I don't know, number 21, those

19   numbers are larger.  That has no particular

20   significance.  You know, we probably borrowed those

21   numbers from another courtroom or something along

22   those lines.

23       But you're about to undertake very serious

24   business, but, you know, it's a small part of the

25   civic duty and responsibility I think that we all

1    share and we all have.  I mentioned that you

2    represent the cross-section of the community, and

3    you do, and that's what our jury system is all

4    about.

5        I had the privilege of just coming back from

6    Argentina, which was not really rough duty, as you

7    can imagine.  But I did speak to professors and

8    judges and business people and prosecutors and

9    defense lawyers about the merits of our jury

10   system.  And you may or may not know, but we

11   basically conduct about 95 percent of all of the

12   jury trials in the free world right here in the

13   United States.

14       We have a lot of trials in this district.  In

15   federal court there are a 94 districts.  We are one

16   of those 94, and that involves the entire United

17   States.  And we are the seventh busiest district in

18   the country.  And, in part, I think that's because

19   we are a border location.  We're part of, you know,

20   agriculture belt, we're part of an old rust belt of

21   manufacturing.  All these matters factor into the

22   volume of cases that are in our particular court.

23       Our jurisdiction covers about 3 million people.

24   I think it's roughly 12,000 square miles.  Our

25   borders run from Canada to Pennsylvania on the

1    west, Cattaraugus County on the south, and then as

2    far east as almost Syracuse.  So it's a rather

3    large district, but a manageable district.

4        All of you come from 8 of the 17 counties that

5    comprise our federal district.  And who made the

6    divide where it is, I don't know, but, the other

7    nine counties usually are the ones that are

8    assigned to our Rochester courthouse.  And they

9    draw jurors in Rochester from nine.  We draw jurors

10   from eight.

11       And, you know, I mentioned earlier Argentina,

12   and the reason why I said that is because that

13   country has a constitution that is virtually

14   identical to ours.  It's almost verbatim.  And that

15   constitution was put in place about 75 years after

16   ours.  And their constitution guarantees the jury

17   trial right, as we do.  Under Article 3, Section 2

18   of our Constitution, the jury trial right is

19   guaranteed to individuals who are defendants in

20   criminal cases.  The Seventh Amendment to our

21   United States Constitution guarantees a jury trial

22   in civil cases.

23       And the one difference though in the

24   constitution in Argentina is that the jury trial

25   right was subject to enactment by Congress.  And I

1    did speak to the Congress as well when I was down

2    there.  But, much like ours in this country,

3    there's not always a lot that gets done in a timely

4    fashion.  I don't mean that to throw stones at our

5    system of government, but our forefathers, I think,

6    wanted it that way, because they created two

7    houses, and Congress and the Senate, and that was

8    to make sure that things did not get done so fast

9    that there was not ample time to study it, to take

10   care of it, to get all the wrinkles out.  It

11   doesn't always work, because sometimes what happens

12   is a stalemate rather than getting action that

13   maybe should take place, but for political reasons

14   it doesn't.

15       In Argentina they haven't enacted the

16   constitutional guarantees of the jury trial yet.

17   And one of the things that we talked about in our

18   panel discussions was the importance of having 12

19   members selected from the community asked to make

20   the decision.  Because it's less likely, I think,

21   under that scenario, that utilizing the common

22   sense, the experience, the intelligence of the 12

23   members selected that you're less likely under that

24   scenario to make a mistake.  If a judge controlled

25   it, I mean there's more chance that one person

1    makes an error in judgment or decision than with 12

2    individuals.

3        But the process requires a commitment from

4    those of you that are selected that you're willing

5    to put aside biases and prejudices and follow the

6    law that is given to you.  That's a principle.  The

7    other part is that you respect each other's points

8    of view.  Because in order to benefit from the fact

9    that 12 of you are making a decision, it really is

10   critical that the individuals feel free to express

11   their respective points of view, their

12   recollections, without fear of being looked down

13   upon, or without fear of maybe people being

14   critical.  It really has to be an open process.

15   And that's why it works so well.

16       Because, you know, I'm really a proponent of

17   the jury system.  It works.  And I know it's an

18   imposition on all of you, to some extent when

19   you're selected to sit.  This case will take

20   approximately a week is what we're targeting.  We

21   won't start until Thursday of this week.  We'll get

22   the jury selected today.  And then we'll start with

23   opening statements on Thursday.  And, you know,

24   I'll make sure -- the attorneys have worked hard to

25   get the case ready, so there's likely to be very

1    little delay.  Once we get started we really move

2    the case along.

3        But if you're willing to respect each other and

4    understand why 12 of you are assembled, the system

5    really works well.  And it takes respect for the

6    system and respect for each other to make it work

7    as it should.  And, you know, that's one of the

8    points of view that I expressed when I was recently

9    talking in Argentina.

10       And, you know, it goes back to what one of our

11   forefathers said, Thomas Jefferson, a long time

12   ago, said that jury service is probably the most

13   important of all civic duties and responsibilities,

14   even more important than the right to vote in a

15   general election.  And, you know, I didn't really

16   understand why that was said, but I do have an

17   appreciation for that now.  But if you think about

18   it, 12 of you will be casting a vote.  The system

19   requires an unanimous vote.  But your vote is very

20   important, because it's one of 12.

21       You vote in a general election, you're one of

22   how many million in the state of New York or in a

23   national election, so it's diluted a little bit.

24   But that's why I think the system is as important

25   as it is, and that you should understand how

1    important your service is.  And we're asking you to

2    make that small contribution here in federal court

3    for the short period of time that we're going to be

4    engaged in this particular trial.  It's very

5    important.  It's very important to both sides.

6        It's a criminal case.  And the government

7    brings the case against an individual defendant,

8    and basic rules apply.  The individual who is

9    called a defendant has the presumption of innocence

10   that attaches to him or to her.  In this case it's

11   a him.  And the individual is a gentleman by the

12   name of Steven Knighton, K-N-I-G-H-T-O-N.

13       And the government is the United States, the

14   prosecutor.  You'll meet the individuals who will

15   be a part of the adversarial process, the defense

16   lawyer and then the prosecutor.

17       But it's a time-tested system, and as

18   individual jurors, you have a responsibility to be

19   with us and concentrate to the fullest extent

20   possible, and to carry out your responsibilities

21   according to the rule of law.  And I'll talk about

22   that a little bit later as we go through the

23   process.  Because bottom line is, one, we're going

24   ask you to use your common sense, your experience,

25   and your intelligence in making the decision in

1   this case.  We're going to ask you to do it

2   responsibly.

3       We're going to emphasize for you the fact that

4   you are the judges of the facts.  That's the job of

5   a jury is to resolve the fact issues.  My job is to

6   give you the law.  I'm the judge of the law, and

7   then I resolve, like an umpire.  I make the calls

8   during the course of the trial when there are

9   objections by the lawyers.

10      Federal court is kind of an interesting place.

11  And, you know, I'm glad that none of your faces

12  seem to be all that familiar.  But, you know, we

13  handle all kinds of cases, criminal, civil.  We do

14  patent law.  We do ERISA law.  We do every type of

15  federal civil case that you can think of that

16  involves a law of the United States.  And then

17  there are the criminal laws of the United States

18  that run the gamut from financial crimes, to

19  pornography cases, to drug cases, to racketeering

20  cases, just about anything that has what we call an

21  international interstate connection, and that gives

22  us jurisdiction here in federal court.

23      Local crimes are handled by the city courts and

24  the state supreme courts and the county courts.

25  But we do cases that have a national jurisdictional

1     basis.  Those are the ones that are federal cases.

2         So, the long and short of if is, we're a busy

3     court.  We need your help.  We're going to get

4     started with jury selection at this point in time.

5     And if -- if you have any questions as we go

6     through this, you will be given the opportunity to

7     ask me those questions.

8         I think you all saw a movie, or at least a

9     video in terms of an indicator of what you can

10    expect here in this process today.  The questions

11    will not be intrusive.  The purpose of the

12    questions -- and I'll refer to you by number -- is

13    simply to give the attorneys and Mr. Knighton an

14    opportunity to make a decision as to whether or not

15    you will be selected as one of the 12 jurors, and

16    there will be two alternates that will sit in this

17    particular case.  So it's not an intrusive process

18    at all.

19        You will get a sheet that will key you into the

20    information that we want to hear from you.  That's

21    very limited.  I think you saw the list of

22    questions.  They're not very difficult.  They're

23    just basic informational questions, and then we'll

24    go from there.

25        I'm going to ask the questions.  And the

1    questions will be geared to your ability to sit in

2    this case for the time period that we're involved

3    in, which is roughly a week from this Thursday.

4    And as of this point, you don't know, I don't

5    think, anything more than the name of the case.

6    And if, as things develop, you think you know

7    something or somebody that's associated with this

8    case, just raise your hand, and I'll acknowledge

9    that, and we will talk about whether or not that in

10   any way makes it uncomfortable or difficult for you

11   to serve as a fair and impartial juror in this

12   case.  And that's what we're talking about, being

13   fair, being impartial in a case that's very, very

14   important to both sides.

15       If you raise your hand when I ask a question,

16   I'll acknowledge that or that will indicate that

17   your answer is yes.  Sometimes we can just move on.

18   If you don't raise your hand, then that's an

19   indication that it's not a problem response-wise to

20   the question, and we can move on from there.

21       I'll be addressing my questions principally to

22   those of you that are in the jury box to start

23   with.  But all of those -- all of those, I guess

24   the first 32, because we're going to include the

25   first 32 in my questioning.  That's part of the

1    number that we start working with so we can work

2    from there to get into the final 14, including the

3    alternates.  It's part of the system that we use.

4       Those of you beyond that that are mostly seated

5    in the gallery, just pay attention.  And you don't

6    have to raise your hand or you don't have to

7    discuss things until we call you in to the first 32

8    seats.  And my question, when we replace somebody

9    is simply, have you been listening to the questions

10   and the answers?  Is there anything that you want

11   to call to my attention before we get down to final

12   decision making?  That way I don't have to go

13   through each and every question that I've already

14   asked if we need to replace one of the numbered

15   individuals in the first 32 seats with those of you

16   whose numbers run to about 55 here today.  Okay.

17      You know, I mentioned to you that the questions

18   are perfunctory questions, they're basic questions.

19   If, by chance, anything makes you uncomfortable and

20   you want to talk with me, you can come up to the

21   bench.  I've only had that happen a few times in

22   the 25 years or so that I've had trials and

23   presided over trials.  And that might make it

24   easier for you.  You can relax a little bit more if

25   you feel that it would be uncomfortable for you to

1  answer any of the questions that I'm asking.

2       Most of my questions will be directed to you

3  collectively.  But if you need to individualize it,

4  just raise your hand, and we'll talk to you little

5  bit more about it.

6       You'll get to see the same people every day

7  that you're here.  Mary Labuzzetta is my courtroom

8  deputy.  She manages the cases for me, and she

9  organizations, essentially, this jury selection

10  process.

11      Michelle has a tough job.  Michelle is my court

12  reporter.  She takes down everything verbatim.  So

13  every once in a while when I'm talking too long and

14  running on, she'll give me the evil eye, and I know

15  enough to kind of be quiet and move on from where

16  I'm at.  But it's a tough job to take everything

17  down.

18      So when we get to you we have a handheld

19  microphone.  Chris, our CSO, usually handles that.

20  He will bring it over to you.  You can speak into

21  the microphone, the handheld.  Please be as concise

22  as you can.  I know some people have lived a

23  lifetime to get ahold of a microphone in a public

24  forum setting.  So we're going to ask you to kind

25  of temper your desire to make a mark on history by

1    filibustering or whatever it might take with the

2    microphone.  I think you get the message.  Just be

3    as concise as you can.  Keep your voice up so that

4    we can all hear, and then we'll move on from there.

5        Chris, I mentioned him a couple of times.  He's

6    one of our court security officers.  And they're

7    all over the place in the building.  It has nothing

8    to do in particular with this case.  But ever since

9    9/11, security has been enhanced in our courthouse

10   buildings.  It should make you feel more

11   comfortable, but you should not take it personally.

12   Every day in and out, whether there are trials

13   going or not, we have court security officers in

14   uniform, marshals, other types of security

15   throughout the building.  We have a dog that goes

16   through, and we make sure that everything is

17   copacetic and as safe as we can possibly make it.

18       The security officers wear the blue blazers,

19   the white shirts, the striped ties.  Just so you

20   know, they're clip-ons, and that's another security

21   precaution that we have implemented in the

22   courthouse.  And so you'll see some familiar faces.

23       I tell the attorneys, by the way, not to

24   discuss matters with you.  They're basically

25   friendly.  I used to say harmless, but I'm not so

1    sure sometimes.  But they are, they're harmless.

2    They'll say "good morning," "good afternoon,"

3    whatever the occasion might be, but they're not

4    supposed to speak with you at length, because that

5    runs the risk of somebody thinking there might be

6    partiality involved.  You know, somebody will say

7    well, that juror spoke longer with that lawyer than

8    some other lawyer.  We want to safeguard against

9    that.  Because the appearances are often important

10   as well.

11       So please don't hold it against either side in

12   this particular case.  Those are my instructions,

13   and we want you to be fair to both sides, because

14   there's a lot at stake in a case like this.

15       Before I go further, though, I know you're

16   somewhat comfortable now.  I'm going to ask you to

17   stand because we have to administer the oath, and

18   then I can proceed with the questioning.

19            (Oath administered.)

20            THE COURT:  Okay.  And I know

21   Miss Labuzzetta did get the right oath this time.

22   We have about three or four different oaths.  I

23   think once we had the jury stand, and she gave the

24   oath of citizenship.  But she's corrected that now,

25   so we're on track.

1         Okay.  I've told you what the name of the case

2    is, right?  United States versus Steven Knighton.

3    Trial, approximately one week.  And I'm hoping that

4    we can move through it without delay.  We will

5    start at -- every day we'll try to start at

6    9:00 o'clock.  There might be a day where we start

7    earlier, but we'll end earlier.  I'll give you

8    notice in advance so you can plan your schedules

9    accordingly.

10        Keep in mind that when we start, we need

11   everybody here.  We cannot go through a day or a

12   part of the day without one of the 12 jurors

13   missing.  I mean, it just -- everybody has to be

14   here.  You all have to hear all of the evidence.

15   So please try to be prompt.  We'll try to start

16   promptly.  We'll try to get you out of here in time

17   so you don't run into any undue delay in getting

18   back to your respective homes.

19        As far as your personal schedules are

20   concerned, let me ask the first 32 of you that.

21   Does anybody have any type of serious matter

22   schedule-wise, business or personally that would

23   make it impossible for you to serve as juror in

24   this case for the next week or so?

25        Number 17.  Once second, I'll get you the

1    microphone.

2              PROSPECTIVE JUROR:  I own my own business

3    on Niagara Falls Boulevard, which it's owned and

4    operated, and right now closed with six employees

5    waiting for me to open the doors.  I work there 60

6    hours a week.  I got a lot of schedule -- I wrote

7    everything down for you if you want to review it.

8              THE COURT:  All right.  It can't open

9    without you, is that what you're saying?

10             PROSPECTIVE JUROR:  I'm the only one with

11   the key and the alarm code.

12             THE COURT:  What kind of business is it?

13             PROSPECTIVE JUROR:  It's an after-market

14   12-volt audio.  It's a shop.  Remote starters, car

15   alarms, tints.  Pretty much anything

16   vehicle-related.

17             THE COURT:  Okay.  You must have some

18   backup, though, right?

19             PROSPECTIVE JUROR:  No.  I bought my

20   partners out ten months ago.  I've been in the

21   market for somebody to help me out, but -- anybody

22   need a job?

23             THE COURT:  All right.  We don't usually

24   get that offer.  But I didn't see any hands go up.

25   Maybe there is.  So it won't open today unless

1    you're there?

2              PROSPECTIVE JUROR:  Right.

3              THE COURT:  I'll tell you what I'll do,

4    I'll let you go today, but keep in mind -- I can't

5    let you go permanently.  You will be called back in

6    the next group, I think, of series of trials.  When

7    you get your notice, you have to make arrangements

8    somehow to have somebody open up the business.  So

9    I can't have six people out there freezing today.

10       I'll let you go today.  You will get noticed.

11   You won't get excused unless you go through the

12   process, so I'll let you go today so you can get

13   your employees together.

14             PROSPECTIVE JUROR:  Thank you.

15             THE COURT:  All right.  You're welcome.

16       Chris, number 30, please.

17             PROSPECTIVE JUROR:  I have final exams at

18   UB all next week.  So they can't really reschedule

19   them all, because they're very limited time.

20             THE COURT:  For that reason, I'll let you

21   go.  But understand you'll be called for the series

22   of trials, and that should be after your exam

23   period, okay?

24             PROSPECTIVE JUROR:  Yep.

25             THE COURT:  Okay?  Thank you.

1        THE CLERK:  That's 30?

2        THE COURT:  Yes.  Let's replace number 17.

3  Anybody else?

4      Let me just ask this series of questions,

5  though, quickly.

6      Does anybody have any difficulty understanding,

7  reading, or writing the English language?

8      We're just talking about the first 32 right

9  now.  All right.

10      Does anybody have any difficulty hearing at

11  least me right now?  Because basically you'll hear

12  the attorneys using the microphones, the same audio

13  level should be constant throughout the trial.

14  When we have witnesses, the microphones will pick

15  up approximately at the same audible -- audibility

16  level that I'm at.

17      If you have difficulty, we can accommodate you,

18  because we have wireless headsets.  But if there's

19  a heightened hearing problem or a sight problem or

20  a language problem, let me know that right now, and

21  we'll see if we can address it.

22      Okay.  All 32 are pretty good.  Let's fill 17

23  and then 30, please.

24        THE CLERK:  Juror number 33 will now be in

25  seat 17.

1        THE COURT:  We're working you pretty hard.

2   I know you came into the well area first, and we

3   sent you back to the seats, and now we've got you

4   back in here.  The floor area is called the well

5   area, so we have number 33 in seat 17.  And then

6   we're going to replace number 30 with --

7        THE CLERK:  Juror number 34 will now be in

8   seat 30.

9        THE COURT:  Good morning.

10        PROSPECTIVE JUROR:  Good morning.

11        THE COURT:  Thank you.  Everybody

12   reasonably comfortable?  Okay.  Both of you I think

13   have been listening, right, to my comments so far,

14   my questions.  Do either of you have any health

15   issues or hearing issues or language issues that

16   would make it difficult for you to serve as juror?

17     Okay.  Okay.  Let me ask you this kind of an

18   add-on question.  Sometimes there's a lot of --

19   there might be a matter or two --

20        (Off the record discussion between the

21        courtroom deputy and the Court.)

22        THE COURT:  While we're working on this --

23   the name is okay?

24     All right.  If there are any personal or

25   business issues, like the gentleman that was number

1   17, he had a particular issue today, all right,

2   with his employees and the business, so -- there is

3   enough here that I could accommodate him.  But if

4   there's a particular business-related issue, or a

5   family issue, or you have a personal matter that is

6   so pressing on you that you feel you just can't

7   function normally, if there's anything like that,

8   before we go further, let me -- is there anybody

9   that feels he or she could not function normally as

10   a juror if you were selected under -- because of

11   those kinds of conditions or situations?

12      Okay.  All right.  Let me tell you now a little

13   bit more about this case.  It's a one-count

14   indictment.  All right.  And an indictment is a

15   piece of paper.  All right.  It basically is a

16   document that puts an individual, who is known as a

17   defendant, on notice of what charge or charges he

18   faces.

19      And, you know, the right -- to my right is

20   where the defense lawyer and the defendant sit.

21   That's the way it traditionally has evolved.  The

22   government's attorney and the government's case is

23   presented from the tables to my left.  They're the

24   nearest to the jury box.  There's no significance

25   other than their locations are predetermined.  It's

1    not like every day you're going to see them at

2    different tables.  Plaintiffs, government's

3    attorneys are nearest the jury box.  The defense

4    lawyers and defendants are a little further away.

5    But that's basically the logistics for every trial.

6        The indictment is not evidence at all.  All

7    right.  It's simply a statement of charge or

8    charges.  In this case, it's a one-count

9    indictment.  It goes back to a period of time

10   between January and March of 2009, so we're talking

11   about five years ago.

12       The charge itself is what we call a conspiracy

13   charge.  This is a drug case.  It's a conspiracy to

14   possess with the intent to distribute and to

15   distribute a substance that's called a controlled

16   substance.  It's a prohibited substance under the

17   law, and that's cocaine.  So that's the charge.

18   All right.  That violates the federal drug law in

19   this case.  And you'll find that law in Title 21,

20   Section 846.

21       Now, what I want to impress upon you also is

22   that those of you that are selected as jurors --

23   you've heard me mention common sense, experience,

24   intelligence, okay?  You apply that to what you

25   hear in the courtroom, the four walls of this

1    particular courtroom.  You don't go beyond that.

2    All right.  You don't discuss the case.  You don't

3    go to social media.  You don't go to the Internet.

4    You don't go to Facebook.  You don't do independent

5    research.  You don't go to where the evidence might

6    indicate the event or events took place.

7         You will be given every single thing that you

8    need in this trial to make a decision from what was

9    presented or not presented as evidence in this

10   case.  All right.  You decide the case on the

11   evidence, whether it satisfies the government's

12   burden of proof beyond a reasonable doubt.  That

13   will be the standard of law that applies.

14        There are essential elements to the crime.

15   I'll give you those elements, because that's part

16   of my job.  I give you the law.  I'm the judge of

17   the law.  Remember, you are the judges of the

18   facts.  So you get everything.  You determine,

19   unanimously, has the government proven its case

20   beyond a reasonable doubt?  We'll talk about that a

21   little bit more.  It's not beyond all doubt.  It's

22   beyond a reasonable doubt.

23        The defendant in this case, Steven Knighton,

24   you'll get to meet him in a second.  But the

25   defendant is presumed innocent, which means he has

1    no burden whatsoever.  It's the government's burden

2    to prove the case.  Yet a defendant, in every case,

3    his attorney or her attorney can be proactive.  The

4    attorney can question witnesses, challenge the

5    evidence, put on a defense.  Has no obligation to

6    do any of that.  But the obligation is essentially

7    for the defendant to be in the courtroom, and for

8    the government to present its proof, and then we'll

9    see how that works out in the end.  You weigh the

10   evidence.  You decide the case on the basis of is

11   the evidence sufficient beyond a reasonable doubt

12   or not.

13       The presumption of innocence never leaves the

14   defendant from start to finish.  Mr. Knighton's

15   presumed innocent.  We ask you not to make any

16   judgment on anything you hear until you get

17   everything that's presented to you.  Because, I

18   mean, logically, common sense, all right, it

19   controls.  It should predominate in a case -- in

20   every jury trial.

21       And, you know, you might hear something one

22   minute, the next minute something's added to it or

23   subtracted from it, and so things change as

24   evidence is introduced.  That's why we instruct you

25   and ask you please to avoid any media, whether it

1    relates specifically to this particular case -- and

2    I don't think there's been anything in the media to

3    date about this case.

4        Or does anybody think he or she has heard

5    anything about the case United States versus Steven

6    Knighton?

7        Okay.  I don't think there's been anything.  We

8    have a resident reporter, all right, and that

9    reporter comes in and out of the courtroom.

10   Sometimes there's a substitute reporter, and he or

11   she might do a piece on the news or in the

12   newspaper.  And we tell you to try to avoid that,

13   and the reason for that is basically the

14   common-sense element that we've been talking about.

15   A reporter may come in, hear five minutes or ten

16   minutes or fifteen minutes worth of testimony, have

17   an impression from that testimony.  But it may well

18   be different from yours because you've heard all of

19   the evidence, everything a witness says, all the

20   documents that may be introduced, and then you have

21   to weigh all of that.  And a first impression may

22   not be the final impression.  So, please, defer

23   making any decisions or determinations until all of

24   the evidence is in to see if the government's met

25   its burden of proof beyond a reasonable doubt.

1    Does anybody that feel he or she cannot do

2    that?  That's a basic procedure that we have to

3    follow, that you have to commit to, that you keep

4    your minds open, wait until all the evidence is in,

5    and then determine as part of the full jury of 12

6    whether or not the government has met its burden of

7    proof beyond a reasonable doubt.  Anybody feel that

8    he or she cannot do that?

9    Okay.  The evidence has to be competent

10   evidence.  It has to be admissible evidence.  That

11   will be part of my job.  I'll make the rulings on

12   any objections.  And the attorneys have the

13   obligation to make objections at times when they

14   feel that it's appropriate.

15   The case is not going to be decided, and should

16   not be decided, on the attorneys.  Whether you like

17   them or not, that should be of no consequence.

18   Those are factors that are not permitted for you to

19   consider, whether you like somebody, whether you

20   like me or not, whether you disagree with the

21   rulings, that's not important.  And the reason why

22   it's not important is because it's not competent

23   evidence.  You must decide this case on the basis

24   of competent evidence, whether there's enough or

25   not beyond a reasonable doubt.

1          Let me introduce you.  You've heard me kind of

2     build.  The suspense is building up.  I know I can

3     see in your faces that each one of you are saying

4     who are those guys this courtroom?  So, I want to

5     impress on you, we're talking serious business,

6     right?  And I don't want to make it -- sometimes

7     serious can be a deceptive term.  But if you take

8     the plain meaning, you know why you're here.  Very

9     important matter to both sides, and we'll leave it

10     at that.

11          But, we may have a light moment or two during

12     the course of the trial, but please don't interpret

13     that as having any bearing on the seriousness of

14     the case.  We want to get started.  We want to get

15     it finished.  We want to be fair to both sides.  We

16     want to do everything that we can to make sure that

17     the decision that's rendered by you is separate

18     from any bias with respect to race, color, creed,

19     national origin, anything along those lines.

20          Let's introduce you to the prosecutor.  His

21     name is Thomas Duszkiewicz.

22          Mr. Duszkiewicz, if you want to greet the

23     jurors or prospective jurors.

24               MR. DUSZKIEWICZ:  Good morning, ladies and

25     gentlemen.

1              THE JURY:  Good morning.

2              THE COURT:   Okay.   Mr. Duszkiewicz is what

3      we call a prosecutor.  He's with the prosecutor's

4      office.  That office is the United States

5      Attorney's Office.  It has physical plant space one

6      building up north on Delaware from this courthouse.

7      It's actually 138 Delaware Avenue in Buffalo.  And

8      it's Mr. Duszkiewicz's duty and responsibility to

9      present the witnesses and the evidence on behalf of

10     the government.

11         Now, keep in mind that both sides are always

12     equals, okay?  No side gets to be favored under the

13     law, nor should you favor one side over the other

14     because Mr. Duszkiewicz is a prosecutor, or because

15     there's a defendant or a defense lawyer.  Everybody

16     starts at an equal plane.  That equal plane being,

17     you know, presumption of innocence, the burden of

18     proof on the government.

19         Nobody benefits from the status of the position

20     that a person may hold.  You may think prosecutors

21     are a good thing, good individuals.  You may think

22     defense lawyers are good individuals or bad

23     individuals.  Prosecutors can be bad individuals in

24     your minds.  But it shouldn't weigh in.  It should

25     be everybody here is here to do justice.  Everybody

1    here starts out at an equal status for the trial.

2        Witnesses, you are to judge on the basis of

3    what they tell you, what you observe from those

4    witnesses.  Not who that person is, where that

5    person comes from, what the wealth of that

6    individual is, or is not, or what -- what status --

7    exalted status somebody may have in your eyes.

8    It's a question of do you believe that witness

9    based on the questions and answers and all of the

10   evidence in the case?  Everybody is treated as

11   equals under the bar of justice, as we call it, in

12   this particular courtroom.  And that's what makes

13   it work.  It's a great, great system that you're

14   being asked to be a part of in this particular

15   case.

16       Okay.  You met Mr. Duszkiewicz.  You probably

17   want to know who that defense lawyer is on the

18   opposite table.  And that gentleman is Angelo

19   Musitano.

20           MR. MUSITANO:  Good morning, ladies and

21   gentlemen.

22           THE JURY:  Good morning.

23           THE COURT:  And he has an office in, I

24   think -- is it still 324 Pine Avenue?

25           MR. MUSITANO:  Niagara Falls, New York,

1    yes, Judge.

2           THE COURT:  All right.  And so he's here.

3    He represents the defendant in this case, and

4    that's Steven Knighton.

5           THE DEFENDANT:  Good morning.

6           THE JURY:  Good morning.

7           THE COURT:  Okay.  And you know where

8    Mr. Musitano is from.  Mr. Knighton is here because

9    he's accused of committing the crime that I

10   mentioned to you that is in the one count of the

11   indictment.  But again, presumed innocent.  No

12   burden of proof whatsoever on Mr. Knighton.

13     Let me ask you this.  You've met the

14   individuals now.  Does anybody think you know

15   either one of them, either by reputation, by name,

16   by any association that you may have had in the

17   course of your lives?

18     Okay.  I see a couple of tentative hands going

19   up.  Chris, we're going to try number 6 first, and

20   then 21, I think.

21           PROSPECTIVE JUROR:  Previous to my current

22   career I spent ten years working in the Erie County

23   Central Police Services Forensic Lab.  I've

24   testified in Niagara County, have been

25   cross-examined, and I have testified for -- not

1    Mr. Duszkiewicz in particular, but for his

2    contemporaries.  And in addition, my -- our sons

3    were in the same cub den.  So I'm very familiar

4    with Mr. Duszkiewicz.

5              THE COURT:  And you were cross-examined by

6    Mr. Musitano?

7              PROSPECTIVE JUROR:  Many, many years ago

8    in Niagara County, yes.

9              THE COURT:  All right.  So you know what

10   it's like to be a witness?

11             PROSPECTIVE JUROR:  Yes.  Yes.  I have

12   testified in federal, county, city courts, multiple

13   times.

14             THE COURT:  Okay.  Well, let me ask you

15   this:  It's a live experience.  Can you be fair and

16   impartial in this case?

17             PROSPECTIVE JUROR:  I would want to say,

18   yes.  But I have a lot of baggage.  I understand

19   too much of what has gone on behind the scenes

20   here.  I don't know if I could do that.

21             THE COURT:  Well, do you know

22   Mr. Knighton?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  Do you know anything about the

25   facts of this case?

1        PROSPECTIVE JUROR:  Absolutely nothing.

2        THE COURT:  All right.  Now, I mean, you

3    have some specific experience.  That's been a

4    little while ago, though, right?

5        PROSPECTIVE JUROR:  Yes.

6        THE COURT:  All right.  So whatever goes

7    behind the scenes, that's not this case, right?

8        PROSPECTIVE JUROR:  Right, that's true.

9        THE COURT:  All right.  So, I mean, it's

10   up to the lawyers and Mr. Knighton to decide

11   whether or not a juror who tells us about himself

12   or herself, like you are right now, is somebody

13   they would want on their jury.  If -- let me ask

14   you this:  Would you try to be fair and impartial

15   in decision-making and work with the other jurors

16   if you were selected?

17       PROSPECTIVE JUROR:  Yes.  As always, I

18   would be impartial.

19       THE COURT:  All right.  Well, you know

20   what the system is, right?  It's no different than,

21   really, what I explained it.  You may have some

22   firsthand experience, in some cases bad people, in

23   some cases good people.  In some cases you may have

24   been surprised at a verdict, other times not,

25   sometimes disappointed, sometimes elated, fair

1  statement?

2          PROSPECTIVE JUROR:  Fair.

3          THE COURT:  All right.  Would you make

4  your best effort to be fair and impartial here?

5          PROSPECTIVE JUROR:  Absolutely.

6          THE COURT:  All right.  Can you follow the

7  rule, though, that, you know, your experience is

8  your experience.  But, you know, we're not -- this

9  case has to be decided on the evidence that you

10  are, as a member of the juror if you're selected,

11  presented with.  It's not what goes on in the hat

12  that's behind the scene.  It's, has the

13  government's proof satisfied that proof beyond a

14  reasonable doubt standard.  Can you do that?  Can

15  you apply that?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Okay.  It's probably not easy

18  sometimes, right, but it's a part of your

19  experience, fair statement?

20          PROSPECTIVE JUROR:  Yes, fair statement.

21          THE COURT:  What do you do now?

22          PROSPECTIVE JUROR:  Currently I run a

23  laboratory and the safety program at a

24  manufacturing facility in Niagara Falls.

25          THE COURT:  What do you manufacture?

1          PROSPECTIVE JUROR:  Silicon.

2          THE COURT:  Okay.  Okay.  Well, thank you.

3    I appreciate that.  We'll let you stay for a while

4    and see what happens.

5          PROSPECTIVE JUROR:  Thank you.

6          THE COURT:  Thank you very much.  All

7    right.  Twenty-one, please.

8          PROSPECTIVE JUROR:  I know

9    Mr. Duszkiewicz.  Our children went to the same

10   elementary and some of them went to the same high

11   school.

12         THE COURT:  Mr. Duszkiewicz, how many

13   children do you have?  Four.  Okay.  All right.

14         PROSPECTIVE JUROR:  So I know of him, but

15   they were never in the same grades, so we're not --

16         THE COURT:  Do you have a view about him

17   one way or another?

18         PROSPECTIVE JUROR:  No.  I'm neutral.

19         THE COURT:  Okay.  Can you be fair and

20   impartial if you were selected?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Because, Mr. Duszkiewicz is a

23   professional, just like Mr. Musitano, is a

24   professional.  And we all have personalities and

25   families and the like, and we're here to do the

1    best professional job that we can do.  I'm

2    referring to everybody.  You all have jobs, and you

3    all have families, for the most part, and we're

4    asking you to view this proceeding divorced from

5    personalities and divorced from the fact that you

6    might know somebody that's related to somebody

7    else.

8        Are you comfortable, if you were selected,

9    knowing that your children knew Mr. Duszkiewicz's

10   children, and you of know of him, being fair and

11   impartial?

12           PROSPECTIVE JUROR:  Yes, I could be.

13           THE COURT:  Okay.  All right.  Thank you.

14           PROSPECTIVE JUROR:  The other thing I need

15   to disclose is that my oldest son passed away last

16   year from a drug overdose.  So I feel it's only

17   fair that I let you know.

18           THE COURT:  I'm sure it's very traumatic,

19   right?

20           PROSPECTIVE JUROR:  That's correct.

21           THE COURT:  That would be part of my

22   questions.  Since you brought you it up -- and I

23   know that weighs on you.  I think you are a little

24   emotional.  That being the case, though, this is a

25   drug case.  Can you be fair and impartial in a drug

1    case?

2              PROSPECTIVE JUROR:  I can be.  I just

3    wanted you to know that.

4              THE COURT:  Okay.  All right.  Let me open

5    that up to -- and I extend our sympathies to you

6    for that loss.  But, you know, your loss is not

7    this case, and I think you understand that?

8              PROSPECTIVE JUROR:  Yes.  Yes, I do.

9              THE COURT:  Okay.  The fact that somebody,

10   like juror number 21, has lost somebody I'm sure

11   she loved a great deal.  I mean, we've all read

12   about drug cases and situations resulting from drug

13   overdoses, and, you know, it's not a pretty picture

14   oftentimes.  But, again, that's not related to this

15   case.  I mean, those types of instances and

16   situations are not this case.

17       And my question is, I mean, we're talking very

18   candidly about the downside of drugs, drug use,

19   drugs abuse, that takes into account all kinds of

20   aspects of obtaining drugs, manufacturing drugs,

21   distributing drugs, individuals conducting

22   themselves and profiting from drugs, and there's

23   violence associated with that.

24       I mean, those are -- you know, we hear

25   terminology like war on drugs, and that usually is

1    associated with law enforcement and political

2    efforts to curb the use and distribution of illicit

3    drugs.  I think we're all aware that that is a part

4    of what's going on in this country, and elsewhere,

5    and on the streets, and maybe in our neighborhoods.

6    But that doesn't mean, in any respect, that that

7    involves Mr. Knighton.  It has to be proven beyond

8    a reasonable doubt what the charge states in his

9    case, that he unlawfully conspired back in that

10   three-month period approximately in 2009 to possess

11   with intent to distribute and to distribute

12   cocaine.

13       That's one person, one time period.  But does

14   anybody feel he or she cannot serve as a juror

15   fairly and impartially just because the case

16   involves drugs?  Okay.  Everybody's okay with it.

17       Let me ask you this, those of you that the

18   first 32 seats, do any of you have an active

19   role -- we heard, for example, Juror 21 said that

20   her children I think knew Mr. Duszkiewicz's

21   children.  And in schools there's programs like

22   DARE and other programs that are meant to educate

23   children about the dangers of drugs, and what to

24   look for, and how to properly handle matters

25   relating to drugs.

1        Do any of you take an active role in schools or

2   in organizations or contribute money to

3   organizations that are involved with either the

4   activities to curb drug use, or maybe organizations

5   that take positions publicly and, with proposed

6   legislation, to legalize drugs in this country

7   anybody an active contributor or proponent of

8   organizations, or even yourself.  Do you give

9   speeches or anything like that favoring drugs or

10  opposing drugs, or are you part of something that

11  goes on at work or school that makes you more

12  sensitive to the drug issues that face our country

13  at the present time.

14      Is anybody involved like that?  Okay.  All

15  right.

16      Okay.  Once again, the division of labor is you

17  decide the facts fairly and impartially.  I will

18  give you the law.  And I'll tell you what the law

19  is.  And, you know, every day you're going to pick

20  up the newspaper or maybe turn on the television or

21  radio or go to the Internet, and something will be

22  on there about drugs.  It may not relate to this

23  case, in particular, but if it has anything to do

24  with drugs generally, drug-related violence, even

25  if it's not this case, don't run the risk of

1    tainting your thinking as far as what your burden

2    is here, what your job is here, to decide this case

3    on the basis of the evidence or lack of evidence

4    alone.  So keep that aside for the one week that

5    we'll have you here as jurors.

6         Again, it's going require your setting aside

7    any personal opinions or views or feelings that you

8    have that might, if you will, be, in the abstract,

9    prejudicial.  I mean, we all have biases and

10   prejudices, and I think we all will admit that.

11   The one thing that I know we can do, because it's

12   been done all the time by jurors in all of the

13   various cases, they will set aside biases and

14   prejudices, at least for that week that they're

15   asked to be jurors, and really work to be fair and

16   impartial, and that's what we're asking you to be

17   here today.

18        Again, if it's law enforcement people that are

19   witnesses in the case -- and I expect there will

20   be -- I'm going to run through some names of

21   witnesses.  You all told me right now that you can

22   decide the case fairly, without bias or prejudice.

23   You'll work at doing that to the best of your

24   ability.  Again, is there anybody that feels he or

25   she cannot do that?

1        Okay.  I'm going to, once again, reference a

2   number of witnesses.  And I know a number of them

3   that may be called are law enforcement witnesses.

4   Makes no difference what positions they hold.  You

5   treat them as every other witness, and you view

6   testimony in the context of all of the other

7   evidence that's produced during the course of the

8   trial, if there is evidence.  I mean, I don't even

9   know that at this point.

10       I assume you will be hearing from the

11  witnesses.  They will produce evidence.  I will be

12  hearing what the evidence is in this case along

13  with you.  So I don't really know what this case is

14  about.  I presided over it to get it ready for

15  trial.  But in terms of what the witnesses will

16  say, I don't have any idea.  So we'll wait and see

17  in that regard.  So there might be evidence on

18  those essential elements.  You have to weigh

19  whether it's sufficient beyond a reasonable doubt.

20       The names that might appear in the testimony --

21  it doesn't mean that they are going to be

22  witnesses, but just to make sure that there's

23  nobody here that would make you uncomfortable if

24  you were to be selected, I'm going to read the

25  names that may possibly be referenced during the

1    course of the trial.  There's Douglas Davis, Keith

2    Fox, Mary Clark, Lyle Baxter, Ronald Yates, Jose

3    Figueirido, Kathy Smith, Jack Weinerth, Patrick

4    DiPirro, John Poggi, Elliot Boyce, B-O-Y-C-E, Sam

5    Serrano, Scott Griffin, Timothy Ryan, Jackalynne

6    Vimislik, V-I-M-I-S-L-I-K, Jimmie Phelps, Jordan

7    Bonafede, Theanial Thurman, Mike Sliwinski, John

8    Doskocz, D-O-S-K-O-C-Z, Jonathan Ober, Justin Haag,

9    David Filipski, Clinton Calloway, Gene Nanna, James

10   Rensel, Glenn Zawierucha, Z-A-W-I-E-R-U-C-H-A,

11   Shawn Larrabee, John Schuster, William Valerio.

12        Any names that I missed, Mr. Duszkiewicz?

13             MR. DUSZKIEWICZ:  Judge, not from the

14   witness list.  But I'll likely be assisted by

15   Patricia Prawel, who is a paralegal in my office.

16             THE COURT:  Yes.  And Miss Prawel will

17   probably sit at the table right behind

18   Mr. Duszkiewicz.  And you'll see that -- those of

19   you that are not in the jury box, there are

20   individual monitors -- well, they're actually

21   monitors in the jury box that are shared by every

22   two jurors.  And the evidence will be presented

23   from time to time on those monitors.  So it makes

24   it a little bit easier to follow the testimony

25   sometimes in a case.  And the paralegal from the

1    U.S. Attorney's Office will be responsible for

2    monitoring and presenting the documents that are

3    competent for you, as jurors, to see in this case.

4        Okay.  I told you what the indictment is.  Any

5    of those names ring a bell with any of you?  Do you

6    think you know any of those individuals?

7        All right.  I see a hand, but you're up in the

8    gallery, so hold that in case you're called in,

9    okay?

10       All right.  What's going to happen after jury

11   selection, you're going to get the details about

12   the case.  All you know, all we know is what I

13   related to you the charge is.  It's that charge

14   involving cocaine conspiracy back in 2009 for that

15   approximate two-month period of time.  When the

16   attorneys make their opening statements, they can

17   give you the details of what they expect the

18   evidence to show or not.  And that's where, you

19   know, the trial actually begins.

20       That's not evidence, because what the attorneys

21   say, what I say, that's not evidence.  The

22   competent evidence is what you hear -- the answers

23   of the witnesses, that's the evidence, the exhibits

24   received into evidence.  Sometimes there will be

25   stipulations or agreements that the evidence is

1  competent, proper for you to consider.

2      And then there's also a fourth matter that

3  comes into play once in a while, it's called

4  judicial notice.  When there's no dispute with

5  respect to a particular matter that, you know,

6  maybe the day of the week or a particular statute

7  that might be involved, I can, what's called,

8  judicially notice it.  You can accept that as

9  competent evidence, if you choose to, in your

10  deliberations.  And I'll highlight that for you at

11  the appropriate time.

12      But that's all the evidence that there is,

13  answers of witnesses, evidence received, documents,

14  and the like at trial, stipulations, and judicial

15  notice.

16      The defendant in this case, Mr. Knighton, has

17  entered a not guilty plea.  And he's presumed

18  innocent.  And again, the government has the only

19  burden beyond a reasonable doubt.

20      Okay.  You may or may not agree with the drug

21  laws of this country, and whether you do or don't,

22  that should not factor into the decision-making

23  process.  And here's why I say that:  Because you

24  decide the case on the basis of the evidence or the

25  lack of evidence based on the law that I give to

1    you.  The law today is the law that you will be

2    deciding the case on.

3        Whether you believe the law should change or

4    you disagree with the law, that has to be divorced

5    out of what you're being asked to do.  Changing the

6    law, that's a job for Congress.  And once the law

7    is changed, that will be what somebody is judged

8    by.  That's the barometer, that person violated

9    that new law or not.  But we're dealing with the

10   law that's on the books today.

11       Does anybody feel that he or she cannot decide

12   the case on the basis of the law that I give to

13   you?  That's the oath that you have to take.  You

14   take the law as I give it to you without

15   challenging the wisdom of the law or without

16   factoring in how you feel about the law.  Is

17   everybody okay with that role?

18       Okay.  Terrific.

19       As far as the attorneys are concerned, the U.S.

20   Attorney's Office is the prosecutor's office.  Does

21   anybody know any other prosecutor, investigator

22   employee, anybody do business with the United

23   States Attorney's Office here in the city of

24   Buffalo?  Or elsewhere?

25       All right.  Does anybody know anybody that

1    might work, for example, or do you do any business

2    with Mr. Musitano's office in Niagara Falls?

3        Okay.  Does anybody have an attorney in their

4    immediate family that you're very, very close to

5    that practices criminal law in Western New York or

6    that is a prosecutor anywhere in the United States?

7        Okay.  All right.  I think we have number 7,

8    and is that number 28?  Okay.

9        Seven first, please, Chris?

10           PROSPECTIVE JUROR:  My first husband, he's

11   deceased.  He was an attorney.  He was in practice

12   for many years in Indiana, went to UB Law School.

13           THE COURT:  And did he practice criminal

14   law?

15           PROSPECTIVE JUROR:  Yes.

16           THE COURT:  Did he practice here in this

17   area, too, or not?

18           PROSPECTIVE JUROR:  No.

19           THE COURT:  Okay.  Anything about that

20   experience -- again, I'm sorry for your loss -- but

21   that would cause you to think you could not be fair

22   and impartial in this case?

23           PROSPECTIVE JUROR:  No.  We really didn't

24   talk about his work.  I was raising kids.

25           THE COURT:  Okay.  How many?

1            PROSPECTIVE JUROR:  Two boys.

2            THE COURT:  Any of them know

3    Mr. Duszkiewicz's kids?  Not as far as you know?

4            PROSPECTIVE JUROR:  No, sir.

5            THE COURT:  Okay.  Thank you very much.

6    All right.  Number 28, please.

7            PROSPECTIVE JUROR:  My brother-in-law, is

8    that considered my immediate family?

9            THE COURT:  Sure.  It depends, do you want

10   him to be?

11           PROSPECTIVE JUROR:  I very much do.  He's

12   an attorney, Thomas Casey.

13           THE COURT:  What's his name, please?

14           PROSPECTIVE JUROR:  Thomas Casey.

15           THE COURT:  Thomas Casey.  Okay.  And he

16   practices, I think, some criminal law, right?

17           PROSPECTIVE JUROR:  Yes, he does.

18           THE COURT:  All right.  And is there

19   anything about that relationship that would cause

20   you to think you would be uncomfortable sitting in

21   this case?

22           PROSPECTIVE JUROR:  No.  I just want to

23   note it.

24           THE COURT:  I appreciate that.  The other

25   thing is if you know attorneys and you're close to

1   them, I take it you could follow my instructions,

2   which apply to everybody.  Don't discuss this case

3   until it's completed with anybody, family,

4   attorneys, friends, nothing on, I mean, Facebook,

5   the media, can you do that?

6           PROSPECTIVE JUROR:  Yes.

7           THE COURT:  All right.  Thank you very

8   much.

9       All right.  Is anybody that, at least are in

10  the first 32 seats, had any experience with the

11  government, either a state or federal or local

12  level that is an experience that has made such an

13  impression on you, good or bad, that you could not

14  be fair in this particular case because of that

15  experience?  Anybody feel that way that you've had

16  kind of relationship or that kind of experience?

17      All right.  Has anybody been the victim of a

18  crime?

19      Anybody here been convicted of crime?

20      Okay.  All right.  I have two last questions,

21  and we'll start with Prospective Juror number 1,

22  and we'll ask you to take the sheet and kind of

23  work through it, and once we get through 32 of you,

24  we'll be in a situation to start our jury selection

25  process.

1        Does anybody have either a moral or an ethical

2    or a religious view that precludes you or prevents

3    you from rendering judgment involving another

4    individual?  You know, sometimes individuals have

5    those kinds of viewpoints that are imposed through

6    religious beliefs, through moral convictions that

7    they just don't want to stand in judgment of

8    another individual.  And in this case, that's what

9    you respectively are being asked to do, or will be

10   asked to do, is to pass judgment on someone, but

11   that's based on the evidence or the lack of

12   evidence.  It's not personal, but it's applying the

13   rule of law, so to speak.

14       Does anybody feel he or she cannot serve

15   because of any type of belief along those lines?

16       Okay.  And then finally, we talked about biases

17   and prejudices, and Mr. Knighton is obviously a

18   dark-complected individual.  He's a black man.  His

19   race is that.  Does anybody feel that he or she

20   would be in any way affected by the race of

21   Mr. Knighton in this case such that you could not

22   be fair and impartial?

23       Okay.  All right.  Want to take -- let's take

24   15 minutes.  We'll start again at 11:15.  Everybody

25   has to leave.  You have to go with Chris.  You can

1    leave things behind because the courtroom is

2    secure.  But you can take your numbers with you.

3    We'll get started.  We're on track to, I think,

4    wind up pretty much on target.  So take a break.

5    We'll start again at 11:15.  If anybody has any

6    issues -- and keep in mind, too, if you are

7    selected and you need a break, or if you need to

8    stand and stretch, we can always arrange that.

9    We'll try to be as accommodating as we possibly

10   can.  You've been terrific.  I really appreciate

11   it.  We'll see you in about 15 minutes, okay?

12            (Short recess was taken.)

13            (Prospective jurors seated.)

14            THE COURT:  Okay.  Thank you, Chris.

15   Ladies and gentlemen, welcome back.  Good to see

16   everybody.  Hope the break was well-timed for you.

17       Okay.  We're going to start now with the

18   answers to the questions on the sheet.

19       Chris, if you could give Juror number 1 --

20   Prospective Juror number 1 the microphone, please.

21   If you just answer the questions, and we'll work

22   right through it.  You set the standard for

23   everybody else.  How they perform depends how you

24   sound.  Go ahead, please.

25            PROSPECTIVE JUROR:  My name is -- or my

1      age is 44.  I live in the village of Lancaster.

2              THE COURT:  Did you get any snow there?

3              PROSPECTIVE JUROR:  A little bit, yeah.

4              THE COURT:  Okay.

5              PROSPECTIVE JUROR:  Own my own home.  I

6      currently work for Paychex Incorporated, and I work

7      in our risk management department handling

8      payroll-related penalties for our clients, working

9      with state and federal government trying to

10     mitigate risk and try to help our clients get

11     penalties removed that have been caused by Paychex.

12     I've been there for 14 years, working there for 14

13     years.  I have a bachelor's degree in sociology.  I

14     am married.  My wife works in medical coding claims

15     analyst-type work.  We have three children.  Our

16     twins are six and our oldest is 12.

17         I've not been in the military.  Reading habits,

18     Buffalo News, Sports Illustrated, People magazine.

19     I'm big Dan Brown fan.  I love all of his books.  I

20     like detective-type books, all the Alex Cross

21     novels, I enjoy those.  TV viewing, I like sitcoms.

22     My wife and I spend a lot of time watching some of

23     the Law and Order series, things like that.  I'm

24     big in sports, playing any kind of sports with my

25     kids, golf, basketball, things like that.  And my

1    oldest son went through Cub Scouts and I was his

2    Cub Scout leader for about three to four years.

3                THE COURT:  Okay.  Thank you.  Couple of

4    questions before you pass on the microphone and the

5    sheet.  Your work in risk management, does that

6    involve work with law enforcement?

7                PROSPECTIVE JUROR:  No, it does not.

8                THE COURT:  Okay.  You said with federal

9    and state, though.

10               PROSPECTIVE JUROR:  Yeah.  I'm the -- I

11   work with the departments of revenue, unemployment

12   offices as far as trying to get details regarding

13   tax returns that maybe my company didn't file for

14   our clients or things like that, payments that were

15   made late.  It's not -- does not involve law

16   enforcement.

17               THE COURT:  And your wife works with

18   medical claims?

19               PROSPECTIVE JUROR:  Yeah.  Claims analyst,

20   working with insurance -- working with insurance

21   companies trying to recover money, overpayments in

22   insurance companies may have made to various

23   providers.

24               THE COURT:  Okay.  Thank you very much.

25   If you would pass that on to Prospective Juror

1    number 2, please.

2              PROSPECTIVE JUROR:  My name is Judy

3    Guarino.  I live in the village of Depew.  I own my

4    own home.  I work for Peerless Manufacturing in

5    Orchard Park.  I am an accounts receivable manager.

6    I've been there 27 years.  Graduated from high

7    school.  Am married.  My spouse has been retired

8    for over ten years.  I have no children.

9        I've never been in the service.  Reading

10   habits, the Buffalo News, People magazine.  TV,

11   basically lot of the news stations, sitcoms.

12   Outside interests, I volunteer at church, and I

13   don't belong to any clubs or organizations.

14             THE COURT:  Okay.  Your spouse, before he

15   retired, worked where?

16             PROSPECTIVE JUROR:  At John Egan

17   Associates.

18             THE COURT:  What is that business?

19             PROSPECTIVE JUROR:  That's a law firm.

20             THE COURT:  Okay.  And what did he do

21   there?

22             PROSPECTIVE JUROR:  Basically secretarial

23   work.

24             THE COURT:  Okay.  And is that a local law

25   firm?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Okay.  Do you know the kind of

3     work they did?

4          PROSPECTIVE JUROR:  Civil.

5          THE COURT:  All right.  Do you know the

6     attorneys?

7          PROSPECTIVE JUROR:  No.

8          THE COURT:  Okay.  Okay.  Thank you very

9     much.  And if you pass that on, please.  You don't

10    have to give us your name.

11        Just by the way, keep in mind too, I know we

12    probably all watch televisions and sitcoms and the

13    like, but this is not likely to be like you see on

14    television in the various sitcom programs.  We play

15    by a little different set of required rules, and it

16    likely will not be dramatic, so don't be

17    disappointed.  Just understand what the proper role

18    should be in a case like this, okay?

19        All right.  Number 3.

20        PROSPECTIVE JUROR:  I'm 42 years old.  I

21    live in Busti, New York, which is in Jamestown.  I

22    own my own house.  I work at Truck-Lite Company,

23    which is in Falconer, New York.  I've been there

24    for 20 years.  I'm a payroll accounting clerk, so I

25    help process payroll, do general accounting,

1    entering invoices, stuff like that.  I've have an

2    associate's degree in business from Jamestown

3    Business College.  I am married.  My spouse works

4    at Inscape, which is a cubicle wall company.  He's

5    been there for 15 years.  I have one child who is

6    ten.

7         No military status.  Reading habits, I read the

8    Post Journal and Harry Potter books.  TV viewing

9    habits, usually I watch sitcoms and Ghost

10   Adventure, and stuff like that.  Really no hobbies.

11   And I'm a treasurer of our Busti Fire Department.

12             THE COURT:  Okay.  Are you a volunteer

13   fireperson?

14             PROSPECTIVE JUROR:  No.

15             THE COURT:  Just treasurer.

16             PROSPECTIVE JUROR:  Yeah.

17             THE COURT:  Okay.  Your company is chuck

18   light?

19             PROSPECTIVE JUROR:  Truck-Lite.

20             THE COURT:  Okay.  What is the business of

21   Truck-Lite?

22             PROSPECTIVE JUROR:  We manufacture

23   vehicular safety lighting on the big semi trucks.

24             THE COURT:  Okay.  Thank you very much.

25   If you pass that on, please.

1          PROSPECTIVE JUROR:  I'm 24 years old.  I

2     live in Blasdell, New York.  I own my own house.  I

3     am employed with Waste Management.  I'm a mechanic.

4     I've been there for a little over a year now.  I

5     have two associate's degrees, one automotive

6     technology and one in automotive body repair.  I'm

7     single.  I have one daughter, three months old.

8          No military.  I read Four Wheel magazine, some

9     news every once in a while, not too often.  A lot

10     of service manuals.  I watch Family Guy, funny

11     shows like that, some documentaries every once in a

12     while.  Interests and hobbies, I like hunting,

13     sports.  I used to be a professional timber sport

14     athlete in Alaska.  I enjoyed doing that.  Anything

15     outside.  I'm part of West Falls Conservation

16     Society.

17          THE COURT:  Okay.  Good.  Thank you very

18     much.  Number 5, please.

19          PROSPECTIVE JUROR:  I'm 54 years old.  I

20     live in East Aurora, New York.  I own my own home.

21     I'm employed by the research foundation of the SUNY

22     system, division called the Center for Development

23     of Human Services.  There I work as a database

24     administrator and statistician.  I worked there for

25     15 years.  I have degrees from SUNY in

1      pharmacokinetics and biochemical pharmacology.  I'm

2      married.  My wife is a pharmacist, and she owns her

3      own pharmacy with a business partner.  We have two

4      children, 13 and 15.

5          I did not serve in the military.  I like

6      Buffalo News, and New York Times, Washington Post,

7      science fiction.  TV would be science fiction,

8      dramas, comedies.  I like to ski, play tennis,

9      boating, and that's it.

10             THE COURT:  Okay.  By occupation and

11     profession both you and your wife have some

12     association with drugs, legal.

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Any consequence to that, I

15     mean, in terms of your ability to be fair and

16     impartial here in this case?

17             PROSPECTIVE JUROR:  No.  I mean, I don't

18     have any problem with that.

19             THE COURT:  Okay.  All right.  Thank you

20     very much.

21             PROSPECTIVE JUROR:  I'm 43.  I live in

22     West Seneca.  I own my own home.  I currently work

23     at Globe Metallurgical in Niagara Falls, New York.

24     They manufacture silicon.  I run the quality

25     control lab there, and I run the safety program

1   there.  I've been there for almost a year.  My

2   formal education, I have a B.S. in biology from UB.

3   I have a M.S. in applied molecular biology from

4   University of Maryland, Baltimore County.  I'm

5   married.  My loving wife is a homemaker.  She

6   raises our four children who are now 20, 16, 14 and

7   9.

8       I've never served in the military.  I read

9   mostly scientific journals and trade journals for

10  safety.  I watch very little TV.  And I -- when I

11  do watch TV, it's usually sports-related, and I

12  need the red, white, and blue of the Buffalo Bills.

13          THE COURT:  Well, you say that now,

14  because they just won on Sunday.  But what about

15  this coming weekend?

16          PROSPECTIVE JUROR:  This coming weekend I

17  think -- although I firmly believe that they will

18  end up being clearly ten and six in the playoffs.

19  I believe that if they get to Peyton Manning early

20  and throw him off his game, we have a chance.

21          THE COURT:  Yeah, but Marcell Dareus has a

22  hip injury.

23          PROSPECTIVE JUROR:  They just say that.

24  You don't really know, you know, you got to have

25  faith.

1            THE COURT:  All right.  All right.  We

2    hear you.  Now we know your true colors.  Good

3    enough.

4        Number 7, let's go.  Thank you.

5            PROSPECTIVE JUROR:  I'm 66 years of age.

6    I live in Lockport.  I own my own home.  I am

7    employed by the Department of Veterans Affairs in

8    the education division.  I process enrollments and

9    original claims for education benefits for

10   veterans.  I have been there five years and nine

11   months.  I graduated from the University of Buffalo

12   with a bachelor's degree.  I'm single.  I have two

13   children, 43 and 39.  They are one -- my youngest

14   is with at the Department Homeland Security Customs

15   and Border Protection, and my oldest is a project

16   manager for C2HM Hill.

17       I have no military experience.  I read a lot of

18   print, three newspapers, rarely a magazine.

19   Buffalo News, New York Times, the Washington Post,

20   a few publications online, the Christian Science

21   Monitor.  I view PBS regularly, other TV not so.  I

22   play tennis.  I ride my bike.  I hike.  And I'm not

23   in any clubs or organizations at this minute.

24           THE COURT:  Okay.  I think it's your

25   youngest of the two with Homeland Security.

1    Locally or --

2              PROSPECTIVE JUROR:  Yes.  He's on the

3    Niagara Frontier bridges, mainly

4    Lewiston-Queenston.

5              THE COURT:  Okay.  And how long has he

6    been with Homeland Security?

7              PROSPECTIVE JUROR:  Six years.  Prior to

8    that he was Army for eight years.  Came out an

9    officer.

10             THE COURT:  All right.  I take it you're

11   close to your son?

12             PROSPECTIVE JUROR:  Yes, I am.

13             THE COURT:  Okay.  And --

14             PROSPECTIVE JUROR:  He's the father of

15   three of my favorite grandchildren.

16             THE COURT:  All right.  And how many

17   favorite grandchildren do you have?

18             PROSPECTIVE JUROR:  Five.  The other two

19   favorites live in Ohio with their father.

20             THE COURT:  Okay.  As far as your son is

21   concerned, that's technically law enforcement.

22             PROSPECTIVE JUROR:  Yes, sir.

23             THE COURT:  All right.  Does that in any

24   way incline you one way or another in this case?

25             PROSPECTIVE JUROR:  No.

1          THE COURT:  All right.  You can be fair

2    and impartial?

3          PROSPECTIVE JUROR:  Yes, sir.

4          THE COURT:  And you can follow my

5    instructions and not discuss matters with your

6    sons?

7          PROSPECTIVE JUROR:  Yes, sir.

8          THE COURT:  That relate to this trial at

9    least until it's over with?

10          PROSPECTIVE JUROR:  Correct.

11          THE COURT:  You will take this matter

12    seriously?

13          PROSPECTIVE JUROR:  Yes, sir.

14          THE COURT:  Okay.  And you have no

15    preconceived notions in terms of what the evidence

16    is or isn't in this case and how it should come

17    out?

18          PROSPECTIVE JUROR:  No.

19          THE COURT:  Okay.  Thank you.  Number 8.

20          PROSPECTIVE JUROR:  Okay.  I'm 56 years

21    old.  The I live in North Tonawanda.  I live above

22    my business, over a tavern, which I own.  It's a

23    family business.  It's been in my family since

24    1945.  It was my grandmother and my father, now me.

25    And I've been working there 32 years.  I'm the

1  owner.  I do the ordering.  I do the paperwork.

2  High school graduate.  Single father of two,

3  ages -- two boys, 18 and 15.  My one son is going

4  to NCCC for law enforcement.  My other son, 15, is

5  still in high school.

6      Was not in the military.  Reading habits,

7  pretty much the newspapers.  I like sports

8  magazines.  TV habits, sports.  I like Perry Mason

9  and them guys.  I like watching that.  Outside

10  interests, I like to golf, fish, go to sporting

11  events.  And I'm in no organizations.

12              THE COURT:  Now you mentioned you live and

13  work over a tavern?

14              PROSPECTIVE JUROR:  Yes, that.

15              THE COURT:  Is that your business, the

16  tavern?

17              PROSPECTIVE JUROR:  Yes, it is, sir.

18              THE COURT:  Okay.  So all of the ordering

19  and everything that you do and made reference to is

20  in connection with the tavern business?

21              PROSPECTIVE JUROR:  Yes, sir.

22              THE COURT:  Okay.  Thank you very much.

23  Okay.  Number 9, please.

24              PROSPECTIVE JUROR:  I'm 27.  I live in

25  Niagara Falls.  I own my home.  I'm in the

1   bricklayers union, about eight years.  Just went

2   through apprenticeship program with them.  I'm

3   single.  I have a three-year-old boy.

4      No military experience.  Just read a couple

5   magazines.  Watch Discovery and History Channel.

6   Like to fish, and I belong to a masonic

7   organization.

8          THE COURT:  Okay.  Thank you very much.

9   Pass that on to 10, please.

10         PROSPECTIVE JUROR:  I'm 53 years old.

11  Stay in Buffalo area.  Own my own home.  Actually

12  work with National Grid, the electric company.

13  Been there 17 years.  Actually I'm the service rep

14  dealing with outages, fire calls, things like that.

15  My wife is basically a homemaker right now.  She's

16  not working.  Education, high school graduate, some

17  college and certification programs.  Got six

18  children, two by marriage and four biological.

19     No military service.  Not much reading.  A lot

20  of TV.  Different things on TV, doesn't matter,

21  sitcoms, movies, whatever.  Depends on how I feel

22  for the night.  And I'm in no clubs, groups, or

23  organizations.

24         THE COURT:  Okay.  You have six children

25  you said.  Any of them -- I don't know what their

1    ages are, but are they employed?

2              PROSPECTIVE JUROR:  Yes.  Let's see, the

3    oldest is not employed right now.  The second works

4    in a nursing-type home.  And the others are not

5    working at this time.  Aging from 23 to 29.

6              THE COURT:  Okay.  All right.  Thank you

7    very much.

8              PROSPECTIVE JUROR:  You're welcome.

9              THE COURT:  All right.  Number 11.

10             PROSPECTIVE JUROR:  I'm 28.  I live in

11   Cheektowaga.  I rent my home or rent my apartment.

12   I work at Geico Insurance.  I'm currently in the

13   customer service department.  Been there almost

14   four years.  High school graduate.  Currently

15   single or engaged.  Have one child who is nine.

16      Never been in the military.  TV, some reality

17   TV, the news occasionally, comedy sitcoms -- TV

18   sitcoms, comedy.  Other interests, cooking,

19   traveling, no organizations.

20             THE COURT:  All right.  Did you ever meet

21   the gecko?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  You did?

24             PROSPECTIVE JUROR:  All the time.  Yeah.

25             THE COURT:  Okay.  Thank you.  Number 12,

1   please.

2              PROSPECTIVE JUROR:  I am 42 years old.  I

3   live in Blasdell.  I own my home.  I work for

4   General Mills.  I work for the plant manager in

5   employee and community relations, and I have been

6   there for about three years.  I have a master's

7   degree in public administration.  I am married.  My

8   husband is a deputy sheriff.  We have three

9   children 18, 14, and 8.  I also have a 15-year-old

10  exchange student living with me this year.

11     No military background.  I read nonfiction and

12  a lot of cookbooks.  Don't watch a whole lot of TV.

13  I just do a lot of cooking, and mostly my hobbies

14  revolve around my children, so I don't have time

15  for hobbies.  And other than our church, we're

16  pretty involved in our own things, so --

17             THE COURT:  Okay.  Thank you.  As far as

18  the exchange student, from what country?

19             PROSPECTIVE JUROR:  She is -- actually

20  she's Vietnamese, but she was born and raised in

21  Germany.

22             THE COURT:  Okay.  And your husband has

23  been with the sheriff's department for how long?

24             PROSPECTIVE JUROR:  About three years.

25             THE COURT:  Okay.  What is his assignment?

1              PROSPECTIVE JUROR:  He is at the holding

2      center.

3              THE COURT:  Okay.  And do you talk to him

4      about his work, his daily activities?

5              PROSPECTIVE JUROR:  I honestly don't see

6      him that much.  We work alternating shifts, so we

7      see each other for just maybe 30 minutes or so in

8      the morning other than his days off.  But try not

9      to talk about work.

10             THE COURT:  Okay.  And what did he do

11     before he was a deputy sheriff?

12             PROSPECTIVE JUROR:  He was -- he was a

13     retail manager.

14             THE COURT:  Okay.  And can you follow my

15     instructions and not discuss this case with him if

16     you were selected?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  All right.  Do either you or

19     both, you and your husband, or just your husband

20     have a lot of law enforcement friends?

21             PROSPECTIVE JUROR:  He has his buddies

22     from work, but he doesn't hang out with them

23     outside of work, so no.

24             THE COURT:  Is there anything about the

25     nature of his employment and the fact that he is

1    law enforcement, if you will, cause you to think

2    you would have any difficulties being fair and

3    impartial in this case?

4              PROSPECTIVE JUROR:  No.

5              THE COURT:  Okay.  Thank you very much.

6    Number 13.

7              PROSPECTIVE JUROR:  I am 43.  I live in

8    the city of Tonawanda.  We own our own home.  I'm

9    employed by Beechwood Nursing Home.  I'm an

10   administrative assistant.  Been there for ten

11   years.  I have an associate's degree in business

12   administration.  I'm married.  My spouse owns an

13   electrical business.  I have a son, who is 13, and

14   two stepchildren that are 25 and 29.  They both

15   work for my husband at the electrical business.

16        Never in the military.  Read an occasional

17   novel, newspaper occasionally.  Not a whole lot of

18   TV, usually whatever my son or husband are

19   watching.  And outside interests, camping and my

20   son's sports.

21             THE COURT:  Okay.  What is the name of the

22   electrical business?

23             PROSPECTIVE JUROR:  Brady Electric.

24             THE COURT:  Is that located here in --

25             PROSPECTIVE JUROR:  North Tonawanda.

1          THE COURT:  North Tonawanda.  Okay.  Thank

2    you very much.

3          PROSPECTIVE JUROR:  Hi.  I'm 57 years old.

4    I live in Tonawanda, and I own my own home.  I work

5    for Caregivers Choice.  I'm a caregiver.  And my

6    husband is retired.  I'm married.  I have three

7    kids, six grandchildren.

8       I've never been in the military.  I like to

9    watch Fox News or comedies.  Go from one extreme to

10   the other there.  And my husband and I teach

11   stained glass at Sweethome High School.  And I do

12   have retired Buffalo police.  They're my

13   brother-in-law and sister-in-law.

14          THE COURT:  Does that create any

15   difficulty for you being fair and impartial in this

16   case?

17          PROSPECTIVE JUROR:  Just do the best I

18   can.

19          THE COURT:  All right.  Well, but --

20          PROSPECTIVE JUROR:  I'm sorry.

21          THE COURT:  I know you'll do -- well, you

22   tell me you'll do your best that you can.  But as

23   you sit there, do you believe that you are fair

24   and -- will be fair and impartial in this case?

25          PROSPECTIVE JUROR:  Yeah.

1            THE COURT:  Okay.  As far as your

2    husband's prior employment before he retired, where

3    was that?

4            PROSPECTIVE JUROR:  National Fuel Gas.

5            THE COURT:  National what?

6            PROSPECTIVE JUROR:  National Fuel Gas.

7            THE COURT:  Okay.  As far as your sitting

8    as a juror, you are not predisposed one way or

9    another in this case?

10           PROSPECTIVE JUROR:  No.

11           THE COURT:  Okay.  Thank you.

12           PROSPECTIVE JUROR:  I'm 59 years old.  I

13   live in the Lovejoy area of Buffalo.  I own my own

14   residence.  I am the telephone operator for the

15   Board of Ed.  High school graduate, some college.

16   I'm married.  My husband is an utility worker at --

17   well, they do the Meals-on-Wheels thing.  I have

18   one child.  She's 40.  She has lupus, so she's no

19   longer employed.  She was employed by Unyts.

20      No military status.  Reading habits, I'm like

21   him, a James Patterson fan.  TV viewing habits, I

22   love the sitcoms.  I love the true drama TV and The

23   Voice.  Outside interests, I like to travel and

24   cruise, and I do not belong to any clubs or

25   organizations.

1          THE COURT:  You're with the Board of

2     Education, the city of Buffalo?

3          PROSPECTIVE JUROR:  Correct.

4          THE COURT:  Okay.  Got to be interesting,

5     right?

6          PROSPECTIVE JUROR:  Very.

7          THE COURT:  Thank you.

8          PROSPECTIVE JUROR:  Hello.  I'm 33 years

9     old.  I live in North Buffalo.  I own my own home.

10    I work at People Incorporated, where I'm a program

11    manager.  I help to create and organize services

12    for mentally disabled adults.  I've been there for

13    12 years.  I have an associate's degree.  I am

14    married.  He's retired from GM.  I have two

15    children, 13 and 15, so they are not employed.

16        I have no military background.  I don't watch a

17    lot of TV, but I do enjoy movies and series, you

18    know, things like that.  I enjoy reading, baking,

19    cooking, camping, hiking.  I do some art.  I am a

20    Little League coach for KT for cheerleaders.

21    They're eight and nine years old.

22          THE COURT:  All right.  That's a lot.  Let

23    me ask you one question, though.  Your associate's

24    degree in what?

25          PROSPECTIVE JUROR:  CAD, computer aided

1    drafting.

2              THE COURT:  Okay.  Thank you.  Okay.

3    Number 33.

4              PROSPECTIVE JUROR:  I'm 55 years old.  I

5    work at Waterfront Health Care Center for 35 years.

6              THE COURT:  I'm sorry, where?

7              PROSPECTIVE JUROR:  Waterfront Health Care

8    Center.

9              THE COURT:  Okay.  Thank you.

10              PROSPECTIVE JUROR:  For 35 years.  And I

11    rent.  Graduated out of 12th grade.  Sorry.  And I

12    have four kids, 25, 26, 36, and 38.  And three are

13    working and one not.

14        And I love watching TV.  I watch Criminal

15    Minds, CSI.  I love to bowl.  I've been bowling for

16    27 years.  And one of my kids work at the

17    tollbooth, which she got three jobs.  She is 25

18    years old.

19              THE COURT:  Where does she work again, I'm

20    sorry.

21              PROSPECTIVE JUROR:  She work at the

22    tollbooth, and she got her own cleaning business,

23    and she work at this place on Dick Road.  And my

24    son, he's 26.  He works for the agencies.  And my

25    other daughter, she's not working.  My oldest work

1  for People, Inc.

2           THE COURT:  Okay.  Before you give that,

3  Prospective Juror number 16, you work at People,

4  Inc. as well, right?

5           PROSPECTIVE JUROR:  Yes.

6           THE COURT:  All right.  Do you know

7  Prospective Juror number 16?

8           PROSPECTIVE JUROR:  It's a big company.

9  No.

10          THE COURT:  Neither one of you know each

11  other?

12          PROSPECTIVE JUROR:  My daughter works for

13  People, Inc.

14          THE COURT:  Oh, okay.

15          PROSPECTIVE JUROR:  Oldest daughter.

16          THE COURT:  Okay.  But as far as you're

17  concerned, you don't know number 16, even though

18  your daughter works at People, Inc.

19          PROSPECTIVE JUROR:  Right.

20          THE COURT:  If I didn't confuse you now,

21  we're going move that over anyway.  Number 18,

22  please.

23          PROSPECTIVE JUROR:  I'm 34 years old.  I

24  live in Niagara Falls.  I live with my mother, so

25  she owns the residence.  I'm a typist at

1    Westminster Community Charter School, which is like

2    an administrative assistant.  I've a bachelor's in

3    psychology at University of Buffalo, a bachelor's

4    in social sciences interdisciplinary with a

5    concentration in community mental health, and a

6    minor in African-American studies.

7              THE COURT:  Does all that appear on your

8    degree?

9              PROSPECTIVE JUROR:  Yeah, it was a dual

10   degree, yes.  Single.  I have no children.

11      I've never been in the military.  I read the

12   Bible, Huffington Post, The Root, a lot of

13   different magazines, BPC, Daily Mail, UK.  I watch

14   not that much TV, but it's either Christian TV or

15   like NBA on TNT, Castle, just random stuff,

16   documentaries.  And I like to read, travel, learn

17   new languages.  And I haven't been in an

18   organization for a while.  The last one was the

19   deaf ministry at True Bethel Church.

20             THE COURT:  Castle's not on Christian TV,

21   is it?

22             PROSPECTIVE JUROR:  No, it's not.

23             THE COURT:  So you make an exception every

24   once in a while?

25             PROSPECTIVE JUROR:  For Castle you have

1   to.  Thank you.

2          THE COURT:  All right.  Thank you.

3   Nineteen, please.

4          PROSPECTIVE JUROR:  I'm 34 years old.  I'm

5   from Getzville.  I do own my own home.  I am a

6   money laundering investigator for M & T Bank.  I

7   have my bachelor's degree.  I've been with the bank

8   for ten years.  I'm married.  My husband also works

9   for M & T Bank as a money laundering investigator.

10  I have one stepdaughter, who is eight.

11     And I'm never been in the military.  Not a big

12  reader.  For TV, I like mystery shows, and I play

13  golf and take my dogs to the park.

14         THE COURT:  Okay.  As part of your job in

15  terms of money laundering at M & T, do you come in

16  contact with law enforcement?

17         PROSPECTIVE JUROR:  They can contact us

18  after we file suspicious activity reports.  They

19  can come to us with a subpoena and I'd have to

20  provide documents.

21         THE COURT:  Okay.  So you're kind of

22  monitoring law-enforcement activities or related

23  activities.  Do you have any concern that you might

24  not be able to be fair and impartial in this case?

25         PROSPECTIVE JUROR:  No, not at all.

1          THE COURT:  Okay.  Thank you.  Twenty,

2    please.

3          PROSPECTIVE JUROR:  I'm 47.  I live in

4    Parkside, North Buffalo.  I own my own residence.

5    I work for Northrop Grumman.  We are a defense

6    contractor.  I worked there for 15 years.  They're

7    located in Williamsville.  I'm a high school

8    graduate.  I've had some college.  My husband is

9    a -- works for Home Depot part time.  I have three

10   children, 15, 11, and 9.

11      I'm not been in the military.  I read the

12   Sunday edition of the Buffalo News primarily.  TV,

13   I don't really watch a whole lot, mostly Cartoon

14   Network because it's on constantly.  I belong to

15   IAAP, which is an administrative professional

16   organization.  I think that's it.

17          THE COURT:  I'm sorry, but I didn't catch

18   what your husband's employment is, please?

19          PROSPECTIVE JUROR:  He works at Home Depot

20   part time.

21          THE COURT:  Okay.  And your employment?

22          PROSPECTIVE JUROR:  I'm employed by

23   Northrop Grumman.  It's a defense contractor.

24          THE COURT:  Okay.  What do you do?

25          PROSPECTIVE JUROR:  I'm an administrative

1   assistant.  I worked there for 15 years.

2            THE COURT:  What does an administrative

3   assistant do?

4            PROSPECTIVE JUROR:  Pretty much

5   everything, typing and answering phones, scheduling

6   meetings, and so forth.

7            THE COURT:  Okay.  All right.  Thank you

8   very much.  Twenty-one, please.

9            PROSPECTIVE JUROR:  I'm 51 years old.  I

10  live in the Town of Boston.  I own my own home.

11  I'm employed by the Small Business Administration

12  Office of Disaster Assistance.  I'm a reservist,

13  which means I'm only called in in large disasters,

14  so I'm currently laid off.  I've worked there for

15  two years.  Prior to that I worked in customer

16  service, human resources and training at J.C.

17  Penny.  I have a bachelor's degree in biology and a

18  master's degree in business administration.  I am

19  married.  My husband is retired.  He was a general

20  manager at National Fuel.

21     I have two other children, a daughter, 24, who

22  works for a physical therapy office and is going

23  back to school for physical therapy.  I also have a

24  son, 18, who is in high school, and he works part

25  time for the town recreation department.

1    I have not been in the military.  I read some

2  mystery novels.  I read things on the Internet,

3  news, and sports.  I watch some TV, anything from

4  Seinfeld reruns to Fox News, to home improvement

5  shows.  I like to swim.  I also like to walk in

6  Chestnut Ridge.  And I'm a volunteer at St. Luke's

7  Mission of Mercy, and I'm active in my church.

8    THE COURT:  Your work with respect to the

9  SBA and disaster assistance, were you called during

10  the snowstorm?

11    PROSPECTIVE JUROR:  No.  We process

12  disaster loans.  So we are waiting to see if FEMA

13  comes in, and then if it's a certain level, where

14  we can make loans to business, homeowners and

15  renters.  If the full-time staff can't handle the

16  workload, then they bring us in.  We help customers

17  over the phone with filling out the applications.

18    THE COURT:  Okay.  All right.  Thank you

19  very much.  Number 22, please.

20    PROSPECTIVE JUROR:  I'm 53.  I live in

21  Westfield, New York.  I own my own house.  We do.

22  I work for FairPoint Communications, which is a

23  telephone company.  I'm a e911 coordinator and

24  office employee basically.  Been there for 15

25  years.  I have a bachelor's in computer science.  I

1    am married.  We have one daughter who is 24.  She's

2    a travel occupational therapist.  My husband works

3    for New York State DOT.

4        Not been in the military.  I read a lot of

5    books, historical novels.  I watch the drama TVs.

6    I like to camp and four-wheel, and I don't belong

7    to any organizations.

8            THE COURT:  Okay.  Did you say your

9    daughter is a travel occupational therapist?

10           PROSPECTIVE JUROR:  Correct.

11           THE COURT:  What is that?

12           PROSPECTIVE JUROR:  It's like a physical

13   therapy, but she teaches people how to redo things

14   if they're physically unable to.

15           THE COURT:  Okay.

16           PROSPECTIVE JUROR:  She travels.  She goes

17   from hospital to hospital, or place to place.

18           THE COURT:  Okay.  That's -- thank you

19   very much.  I appreciate it.  All right.

20   Twenty-three.

21           PROSPECTIVE JUROR:  I am 22 years old.  I

22   live in the village of Akron.  I rent my own home.

23   I work at SkyZone Buffalo.  I am the lead court

24   monitor.  I've been there for over a year.  I have

25   an associates from NCCC in computer aided drafting,

1    and I'm currently in my first year at UB working on

2    a bachelor's for management information systems.  I

3    am single.

4        No military.  No reading habits.  TV habits are

5    comedy, drama, reality.  I play for the dodgeball

6    team at SkyZone, and I ski.  And no clubs or

7    groups.

8             THE COURT:  Okay.  Thank you.

9    Twenty-four, please.

10            PROSPECTIVE JUROR:  I am 24 years old.  I

11   live in Cheektowaga.  I rent my own home.  I work

12   at Ford Gum and Machine Company.  I'm a lead man

13   there.  I've been there four years.  I graduated

14   high school.  I am currently single.  I have no

15   children.  I very seldom watch TV.  I play football

16   outside.  I'm not in any clubs or organizations

17   right now.

18            THE COURT:  Okay.  Thank you very much.

19   Twenty-five, please.

20            PROSPECTIVE JUROR:  I am 48.  I live in

21   Lackawanna.  I rent.  I work at Valvoline.

22   Mechanic.  We do oil changes, transmission flushes,

23   New York State inspection.  I graduated high

24   school.  Some college.  I am single.  I have two

25   children, 20 and 23.  My oldest daughter works and

1   goes to college, and the younger daughter goes to

2   college.

3       I have not been in the military.  I watch

4   action movies, the news.  Let's see, I fish.  And I

5   don't belong to any groups or organizations.

6           THE COURT:  Okay.  Your oldest daughter,

7   where does she work?  You said she works and goes

8   to school.

9           PROSPECTIVE JUROR:  She works at American

10  Legion.

11          THE COURT:  Okay.  And what does she do

12  there?

13          PROSPECTIVE JUROR:  She is an

14  administrative assistant, sort of.

15          THE COURT:  Okay.  Thank you.  All right.

16  Twenty-six, please.

17          PROSPECTIVE JUROR:  I am 36 years old.  I

18  live in Lackawanna.  I rent.  I am a mechanic for a

19  pharmaceutical company.  I've been there for ten

20  years.  I graduated from Orchard Park.  I'm single.

21  No children.

22      Never been in the military.  Don't do much

23  reading.  Don't watch too much TV, but when I do

24  it's like world history, History Channel kind of

25  stuff.  And I like to ride dirt bikes and work on

1    motorcycles.  And I currently belong to no clubs or

2    groups.

3              THE COURT:  All right.  Do you own a

4    motorcycle?

5              PROSPECTIVE JUROR:  I have a couple dirt

6    bikes, but nothing street legal.

7              THE COURT:  Okay.  Thank you very much.

8    Twenty-seven.

9              PROSPECTIVE JUROR:  I'm 33.  I live in

10   Cheektowaga.  I own my home.  I am employed by

11   Buffalo State College as a secretary in the art

12   education department.  I've been there for ten

13   years.  I have a master's degree in creative

14   studies from Buffalo State College.  I'm married.

15   My husband is a toll collector for the Thruway in

16   Waterloo full time.  I have two children.  They are

17   five and three.

18       I have no military background at all.  Reading

19   habits, I like reading novels, Sunday Buffalo News,

20   Facebook.  TV viewing habits are whatever cartoons

21   my children have on at the time.  Outside interests

22   or hobbies, sporting events, music, concerts, those

23   types of things.  No clubs or organizations or

24   anything like that.

25             THE COURT:  Okay.  Thank you very much.

1    Twenty-eight, please.

2             PROSPECTIVE JUROR:  I'm 66 years old.  I

3    live in Hamburg, New York.  I rent an apartment.

4    I'm retired.  I retired about five years ago.

5             THE COURT:  From where?

6             PROSPECTIVE JUROR:  The last place I

7    worked, actually, was the Town of Hamburg.  I cut

8    grass for them.  My principal occupation was as an

9    accountant.  I worked in a bank.  I've worked for a

10   wholesale seed distributor.  I worked for an

11   insurance company.  I have an undergraduate degree

12   from Notre Dame in liberal arts.  I've got a

13   master's in business from Canisius College, and I

14   have a master's in school counseling from St.

15   Bonaventure, which I never used.  I am divorced.  I

16   have four children.  They range in age from 44 to

17   30.  They are all employed.  Two of them are local.

18       I have never served in the military.  I do

19   quite a bit of reading.  I read mostly history,

20   politics, current events.  I break it up with an

21   occasional novel.  And I watch pretty much what I

22   read on television.  I watch a lot of news, talking

23   heads, sports.  My principal hobby is golf.  I play

24   as much golf as I can.  And I'm not a member of any

25   organization.

1          THE COURT:  All right.  Your four

2     children, they're all employed.  What do they do?

3          PROSPECTIVE JUROR:  Let's see.  My oldest

4     is an editor for an electrical consulting company.

5     Second one owns his own company.  He does lawns in

6     the summer and plows in the winter.  And let's see,

7     the third one works for a company that develops

8     programs for the homeless, and the youngest

9     currently works for Geico, but he will be admitted

10    to the bar, I believe it's January 14th of next

11    year.  God willing.

12          THE COURT:  I'm sorry?

13          PROSPECTIVE JUROR:  God willing.

14          THE COURT:  Okay.  Keep the fingers

15    crossed, I know.  Okay.  Thank you.  Twenty-nine,

16    please.

17          PROSPECTIVE JUROR:  I am 38 years old.  I

18    live in Cheektowaga.  I own my home.  I'm currently

19    employed at Children's Hospital in Buffalo.  I'm a

20    registered nurse.  I have an associate's degree.

21    I've been there 14 years.  I am married.  My

22    husband owns his own Allstate agency.  I have two

23    children, 7 and 11 years old.

24       I've never been in the military.  I do not have

25    much time to read.  My TV viewing is sitcoms and

1  what my children watch.  I have little time for

2  hobbies, and do not belong to any clubs or groups.

3         THE COURT:  Okay.  Thank you very much.

4  Thirty-four, please.

5         PROSPECTIVE JUROR:  I'm 64 years old.  I

6  live in the Cheektowaga area.  I own my own home.

7  I'm employed by the Catholic Health Systems for

8  over 40 years.  I work as an activities aid.  High

9  school graduate.  I'm not married, single.  I have

10  two children, 42 and 44.  They both work at the

11  Buffalo News.

12    I've never been in any branch of service.  And

13  TV viewing, I watch a variety of shows on TV.  And

14  I don't have any outside interest.  And I belong to

15  a birthday club.

16         THE COURT:  Okay.  Your employment with

17  the Catholic Health System, are you employed at

18  this new facility on -- downtown?

19         PROSPECTIVE JUROR:  No, not at the new

20  facility, but they have several branches, you know.

21         THE COURT:  Okay.  Thank you very much.

22  Thirty-one.

23         PROSPECTIVE JUROR:  I am 46 years old.  I

24  live in Buffalo.  I rent my house.  I work for Home

25  and Stay Senior Care.  I'm a caregiver.  I have a

1    high school diploma.  I'm engaged.  I have three

2    children.  26-year-old son, he doesn't --

3            THE COURT:  Can you move the microphone up

4    a little bit, please?

5            PROSPECTIVE JUROR:  Okay.  Thank you.

6    Twenty-six-year-old son, he doesn't live with me.

7    Twenty-four-year-old daughter, she doesn't live

8    with me.  Seventeen-year-old son, he's a senior

9    now.  I adopted him from a month and a half.

10       No military status.  Sometime I read the

11   newspaper.  I like watching Cops, Forensics, the

12   news.  I attend church and I'm a member of the

13   usher board.  That's it.

14           THE COURT:  Okay.  Thank you very much.

15   Thirty-two.

16           PROSPECTIVE JUROR:  I'm 62 years old.  I

17   live in the Town of Amherst in New York.  I own my

18   own residence.  I am employed by Erie County

19   Department of Social Services.  I work in foster

20   care.  I'm a senior case worker.  I've been there

21   21 years.  I have a BA in art.  I'm divorced.  I

22   have a son who has just graduated medical school,

23   and he's begun his residency at Cleveland Clinic.

24       I've never been in the service.  I read the

25   Buffalo News daily, Art Voice.  I rarely watch

1    television except on occasion with my elderly

2    mother.  I enjoy gardening and my pets, and I don't

3    belong to any organizations.

4           THE COURT:  Thank you.  Everybody doing

5    okay?  Chris, let's take 15 minutes, and then we'll

6    begin the selection process.  We'll give you a

7    break.  Come back in at 12:30, and we'll continue

8    and wrap things up in relatively short order.

9    Thank you.

10          (Prospective jurors left the courtroom.)

11          THE COURT:  Before we take the break, any

12   challenges for cause?

13          MR. DUSZKIEWICZ:  No.

14          MR. MUSITANO:  I don't have any challenges

15   for cause.

16          THE COURT:  Okay.  Then we'll start

17   preemptories, round one, when they come back at

18   12:30.

19          (Short recess was taken.)

20          (Prospective jurors entered the

21          courtroom.)

22          THE COURT:  Welcome back, ladies and

23   gentlemen.  Okay.  The record will reflect that the

24   attorneys and parties and prospective jurors are

25   all back, present.  Roll call waived.

1    We are going to start -- all of you that are in

2    the gallery waiting, please stay there for a little

3    bit.  We're going to work with the first 32 and see

4    if we get a jury of 12 plus two alternates from

5    them.  If we do, then everybody will be discharged

6    for the day.  But just hang in with us right now.

7        We'll start the process.  I'll explain to you

8    how it works, then I'll tell you a little bit about

9    what you can expect if you are selected and what

10   our work hours are and the like.

11       The system is what I referred to earlier as the

12   struck jury system, and it basically involves six

13   rounds so that the exercise of what we call

14   challenges are done on paper.  And you'll see a

15   paper circulated, and the attorneys will then make

16   an entry if they choose to excuse anybody.  Once I

17   get it, I will announce those that are excused.  I

18   will not tell you who excused them.  It will be an

19   excuse based on the information provided to me, and

20   then you can get up and go and leave your number

21   behind, and that will conclude your service.

22       We go through six rounds like that.  And then

23   if we're successful in those six rounds, we should

24   have at least 12 of you ready to be seated.  And

25   then we'll proceed with an additional round for

1    purposes of selecting the alternates.

2        Just so you know, if you're in that category of

3    prospective alternate jurors, the only distinction

4    is -- and it's significant to the extent that if

5    you're not moved up into a regular juror position,

6    you don't get to deliberate unless you're called

7    during deliberations to come on in.  So, it's more

8    like a utility role.  But it's essential that we

9    have backup in case anything weather-wise or

10   mechanical-wise or health-wise arises during the

11   course of trial or during the course of

12   deliberations.  But otherwise, duties, obligations,

13   authority, et cetera, that's all the same.  There's

14   no distinction between regular jurors and alternate

15   jurors.

16       And then once that's complete then I, if we

17   have 12 regular jurors, two alternates seated, then

18   I'll allow and let everybody that's in the backup

19   roles out there in the gallery leave for the day.

20   And then you'll be free to go, and probably won't

21   get called for a while.  That's kind of the system

22   that we're working on right now.  This is round

23   number one.

24       All right.  Our workday basically we should be

25   starting at 9:00 o'clock.  We'll work the morning,

1    we'll take a couple of breaks.  But we'll work

2    until about quarter of one, 12:45.  And we'll

3    resume again at 2:00 and go until about 4:45 or

4    5:00 o'clock in that neighborhood with appropriate

5    breaks from time to time.  So it's a pretty healthy

6    workday.

7        For those of you that aren't familiar with

8    downtown Buffalo, there is a lot of lunch spots

9    around.  If you're selected as a juror, you can

10   bring in lunch.  Your home will be the jury

11   deliberation room.  And there's a small

12   refrigerator in there.  But nearby are a number of

13   very good, reasonably priced restaurants, and if

14   you're going to have lunch before you return home

15   today, just across the street from the building

16   down -- I'll fill you in.  Okay.  Hold on.  Thank

17   you.

18       Okay.  Round number one, Prospective Juror

19   number 23, you are excused.  Thank you very much

20   for being with us.  If you'd leave your number

21   behind.  Appreciate your service today.

22       Also Prospective Juror number 14, you are

23   excused.  Thank you very much for being with us.

24       And Prospective Juror number 21, you are

25   excused.  Thank you very much for being with us.

1    So if you were to cross the street from the

2    courthouse building, you would basically run right

3    into that monster of the Statler Hotel building

4    that we still are keeping our fingers crossed will

5    develop into something.  But just off to the left

6    of the building there's an extension of Mohawk

7    Street, and at the end of that street is the

8    Osteria restaurant.  Very good homemade Italian

9    food, reasonably priced.

10    Immediately to the left of this building about

11    a half a block up is the New Era Cap Company.  For

12    those sports enthusiasts, you know that all of the

13    professional sports teams, for practical purposes,

14    their hats and caps are made by New Era.  There is

15    a cafeteria in that building.  Very good,

16    reasonably priced.

17    If you continue up Delaware Avenue on the

18    right, there is the Sportsman Grill.  I think

19    there's a Mexican restaurant called Salsarita,

20    something along those lines, just up a bit.

21    Heading off from the courthouse to the right,

22    all right, and you have to really cross Niagara

23    Square, the circle.  Up Court Street is a very good

24    little Greek restaurant called Taki's.  There is a

25    parking ramp right off to the right on Court

1    Street, and it's the Augsburger ramp, and in that

2    ramp is the Courtyard restaurant, very good mostly

3    Greek, but pretty wide range of food.  And then

4    across from that is Dough Bois Pizzeria, and DuBois

5    restaurant.  Good food, homemade, reasonably

6    priced.

7        So, I mean, there's probably ten restaurants in

8    very close proximity of the courthouse, and you'll

9    probably enjoy both if you decide to have lunch.

10   There is a lot of takeout places.  There is Mighty

11   Taco.  If you like the commercial, you can probably

12   enjoy your meal over there as well on Chippewa.  So

13   within two blocks or so you've got ample places to

14   eat.  We will give you enough time on a regular

15   court day to enjoy the cuisine and not get

16   indigestion and get back here in time.  So it will

17   work out pretty well.

18       If you want to carry your own lunch, that's

19   fine.  There are a few tables to sit around at

20   downstairs on the second floor, but there is no

21   cafeteria in the building.

22       So that's -- that's basically our work time

23   schedule.  That's your lunch break schedule.  There

24   may be a day or two where our schedule will change

25   a little bit.  It might start at 8:30, and we'd go

1     until 1:00 o'clock, rather than the 9:00 o'clock

2     until 5:00 o'clock schedule.  We'll keep you posted

3     on that as soon as I get the information that I'll

4     need, and we will keep everybody in the loop.

5     Okay.  That's it.

6         We're on round number two of six, and then

7     we'll go from there.

8         I don't know how many of you have been in our

9     courthouse before, but it's a relatively new

10    courthouse.  We just celebrated our third year of

11    being in this building.  And, you know, I hope you

12    like it.  You contributed to the building of the

13    building with your tax dollars.  But it's a very

14    important building to us.

15        We built it and designed it so it reflected

16    what we came consider to be a transparency.  We did

17    not want it to look like it was a fortress, like a

18    prison.  We didn't want it to be intimidating.  We

19    thought that everybody that enters the building

20    should respect the dignity of what we're trying to

21    accomplish, which is the full and fair

22    administration of justice, and when you walk in,

23    you should feel like everything is open.  There's

24    no secrets.  There's no behind closed doors.  It's

25    right there subject to public scrutiny and that's

1   the way we envision justice and our system.

2      I think to a large measure we've accomplished

3   that.  People seem to like it.  The attorneys, for

4   the most part, find that it's a good building in

5   which to try cases.  The technology generally works

6   pretty well.

7      Okay.  This is round number two of six, and

8   excused will be Prospective Juror number 3.  Thank

9   you very much for being with us.  Please leave your

10  number behind.  And we appreciate you being here.

11     And Prospective Juror number 5, you are

12  excused, sir.  Thank you very much for being with

13  us.

14     And finally in round number two, Prospective

15  Juror number 33, you are excused.  Thank you for

16  being with us.  We appreciate it.

17     Okay.  Ladies and gentlemen.  This is round

18  number three of six.  All right.  Excused in this

19  round, Prospective Juror number 8, you are excused.

20  Thank you very much for being with us.

21     And Prospective Juror number 19, you are

22  excused.  Thank you very much for being with us.

23     This will be round number four.

24     Okay.  This will conclude round number four.

25  Prospective Juror number 6, you are excused.  Thank

1   you very much for being here with us today.

2       And finally in this round, Prospective Juror

3   number 13, you are excused.  Thank you very much

4   for being with us.  Please leave your numbers

5   behind.

6       We will now begin round number five.

7       In our next to last round, this would be round

8   number five, Prospective Juror number 20 will be

9   excused.  Thank you.

10      Okay.  The completion of the first six rounds

11  includes the following individuals who will be

12  excused.  Prospective Juror number 24, you are

13  excused.  Thank you very much for being with us.

14      And Prospective Juror number 25, you are

15  excused as well.  Thank you very much.

16      Okay.  We are going to reposition some of you

17  so that we have you in seats that represent the

18  first 12.  I'll announce where you have to go in

19  just a minute or two, and then we'll proceed with

20  the selection of our alternate jurors.

21      Thank you.  Okay.  Prospective Juror number 15,

22  if you would move up, please, to chair number

23  three, and you become Juror number 3.

24      Prospective Juror number 4, you stay where you

25  are.

1        And Prospective Juror number 16, if you would

2    leave your seat, please.  You become and occupy

3    seat number five, and you are Juror number 5.

4        Prospective Juror number 18, we're going to

5    draft you to occupy seat number six, please.

6        Prospective Juror number 7, you remain there.

7        And Prospective Juror number 22, if you would

8    take seat number 8, please.

9        Okay.  And then the second row, Prospective

10   Jurors number 9, 10, 11, and 12, you remain where

11   you are as the completion of the 12 jurors, okay?

12       All right.  You will be our jury.  I just want

13   to make sure that in the process of all of the

14   questioning and what you know about the case, which

15   is very little other than the indictment and

16   starting on Thursday, we shall go -- or will go

17   approximately a week.  If there is any difficulty

18   with any of you serving as a juror in this case,

19   please let me know now.  Everybody's good.

20       All right.  Well, thank you.  I appreciate it.

21   And we're looking forward to having you serve as

22   our juror in this case.

23       All right.  Now we have a final round, and that

24   will be for the selection of alternate jurors.  We

25   will select two of you.  We have -- starting at 26

1    through 32, although 34 is out of sequence.  You

2    will be our pool from which we select the final two

3    alternates.

4        To the group of the seven of you, any of you

5    not willing to serve as an alternate juror in

6    called upon in this case?

7        You're all okay.  Okay.  Let's see what we do.

8        Okay.  Excused in this final round for

9    alternates would be Prospective Juror number 26,

10   you are excused.  Thank you very much.

11       And Prospective Juror number 27, thank you very

12   much.  I appreciate it.

13       All right.  Prospective Juror number 28, you

14   will take the seat as the first alternate.

15       And Prospective Juror number 29, you will take

16   the seat as the second alternate.

17       Okay.  Numbers 28 and 29, you are able and

18   willing to serve in this case as alternate jurors?

19            PROSPECTIVE JUROR:  Yes.

20            THE COURT:  Yes.  Okay.  All right.  We do

21   have our jury in this case.  34, 31 and 32, in just

22   one second we are going to excuse you.  It came

23   down right to the wire.  You almost made it.  Don't

24   give up hope, all right?

25       All of you that remain in the gallery, we

1    really do appreciate your bearing with us today.

2    Thank you, all of you, for serving as prospective

3    jurors.  I hope at least it was somewhat of a

4    positive experience for you.  Be safe in your

5    travels home today.  Please keep in mind that we'll

6    probably see you in the not too distant a future.

7    But again, thank you for all of your cooperation.

8    You've actually been terrific.  Thank you very

9    much.  Have a good day.

10       Before you leave though, you have to see

11   Miss Labuzzetta out in the lobby.  She'll have to

12   complete your attendance records for today, and

13   then you're free to go.

14       From our jury standpoint, I want to tell you

15   that you're absolutely the best jury that I've had

16   this week, hands down.  You're the only one, but

17   we're not going to tell you that necessarily.  But

18   we're about to start seriousness, okay?  As I

19   started out, the case is important to both sides.

20   And it requires that you be open-minded, fair and

21   impartial, respectful of each other.  It takes a

22   little while to get used to people that obviously

23   you haven't known before.  But you will be asked to

24   contribute in a very significant way.  It may seem

25   like a small part, but it's very, very meaningful.

1    I know I speak from the perspective of the

2    third branch of government.  But the separation of

3    powers and what the legislative branch does, what

4    the executive branch does, what the judicial branch

5    does, very, very important.  These are difficult

6    times.  We don't have a perfect country.  But if we

7    continue to work at it, we get over obstacles and

8    we get over hurdles.  But the procedures and the

9    processes that deserve respect, we have to maintain

10    those.  That really includes jury service.

11    So I hope you will dedicate and commit yourself

12    to following the law.  That's what I will be giving

13    you.  To follow the instructions, don't discuss

14    this case, please, don't investigate it on your

15    own, don't go to the electronic media, social

16    media.  You know, that's disrespectful of the

17    system, of your colleagues, the integrity of the

18    process.

19    If we lose faith in our justice system, that's

20    a serious setback, and really we should do

21    everything that we can to maintain the integrity of

22    that process.  So I ask you to please honor that.

23    I think you'll find jury service, if you

24    haven't served as jurors -- have any of you served

25    as jurors before?

1    Okay.  Anything about that service, though,

2    cause you to think you could not be fair and

3    impartial in this case?  Okay.  That's 1, 2, and

4    12, okay.

5    You will follow my instructions on the burden

6    of proof.  The government has that burden beyond a

7    reasonable doubt.  The defendant, Mr. Knighton in

8    this case, presumed innocent.  That never changes

9    until you decide otherwise.  And how does that

10   materialize, if at all?  After you listen and keep

11   your minds open to all of the evidence, and only if

12   you unanimously determine that the evidence

13   satisfies you beyond a reasonable doubt does that

14   presumption of innocence leave the defendant in

15   this case.

16   So, please keep that in mind.  We will see you

17   Thursday morning.  We will start as close to

18   9:00 o'clock as we can.  So try to allow yourself

19   sufficient time to get here, get situated, get to

20   know the area a little bit.  And I'll try to make

21   sure that we get a full day in so that we don't

22   inconvenience you any more than we have to.  We'll

23   watch the weather.  We'll make accommodations for

24   that.  Looks likes it's going to be a pretty good

25   run so far.

1        I will keep you posted on, not only the

2   schedule, but, you know, explanations of anything

3   that I think you need to know in terms of your

4   continuing service, in terms of what to expect

5   coming up in terms of the case that's on trial, and

6   just ask you please take care of yourself

7   health-wise.  Be safe on your return here on

8   Thursday.  And we look forward to seeing you.

9        Chris will take you to the jury deliberation

10  room.  And that adjoins here, so that's where you

11  will spend a lot of your time during the course of

12  the day.  You'll assemble downstairs on two where

13  you normally were today.  But then you will then

14  return to your home, which is the jury deliberation

15  room, and you can leave your lunch there.  You

16  can -- you know, we'll be addressing you on breaks

17  from there.  When you go to lunch and return, you

18  come back to the jury assembly room on two, and

19  then we bring you up here.  Okay.  That will be

20  your traffic pattern for the next few days starting

21  on Thursday.  Thank you very much.  And that's it

22  for the day.  Okay, if you will go with Chris.

23            (Jury excused from the courtroom.)

24            THE COURT:  Okay.  I expect that your

25  opening statements will not be overly long.

1          MR. MUSITANO:  Mine definitely will not

2     be.

3          MR. DUSZKIEWICZ:  No, I wouldn't expect

4     that, Judge.

5          THE COURT:  Okay.  And secondly, you will

6     provide day-in-advance notice of the witnesses that

7     you expect to call to Mr. Musitano?

8          MR. DUSZKIEWICZ:  Judge, just for the

9     record, I already indicated to your court reporter

10    earlier today, and I don't know whether that was

11    conveyed to the Court, that we're probably going to

12    call five witnesses.  I added another witness with

13    a conversation I had during the break.  I can name

14    those witnesses.  I think there's only going to be

15    six.

16         THE COURT:  You want to do that?

17         MR. DUSZKIEWICZ:  If I can have Michelle's

18    sheet, I'll tell you what I told her previously.

19         THE COURT:  And, Mr. Musitano, if you take

20    notes.

21         MR. DUSZKIEWICZ:  I expect we're going to

22    call Investigator Doug Davis.

23         THE CLERK:  Designate them by numbers.

24         MR. DUSZKIEWICZ:  Oh, I'm sorry.  On my

25    list they're number one.  On my list number five,

1     Senior Investigator Ron Yates; number six is Senior

2     Investigator Jose Figueirido; number nine is

3     Investigator Patrick DiPirro; and either 24 or 25,

4     that's Clinton Calloway or Gene Nana; and, of

5     course, number 30, who is William Valerio.

6              THE COURT:  Okay.  Thank you,

7     Mr. Duszkiewicz.

8         All right.  Mr. Musitano, you're on notice.

9              MR. MUSITANO:  Judge, is that the order

10    the government's calling them in?

11             MR. DUSZKIEWICZ:  No, but I expect those

12    are all the first day's witnesses.

13             MR. MUSITANO:  Thank you.

14             THE COURT:  Okay.  Now is that your entire

15    list, or is that your first day?

16             MR. DUSZKIEWICZ:  I believe that's all

17    we're going to need.

18             THE COURT:  Okay.  Thank you.  All right.

19        Mr. Knighton, we'll see you when?

20             THE DEFENDANT:  Thursday.

21             THE COURT:  Okay.

22             THE DEFENDANT:  Thank you, Judge.

23             THE COURT:  You bet.

24             *      *      *      *      *      *

25

1                          CERTIFICATION

2

3           I certify that the foregoing is a

4       Correct transcription of the proceedings

5       Recorded by me in this matter.

6

7

8                         s/Michelle L. McLaughlin
                          Michelle L. McLaughlin, RPR
9                              Official Reporter
                              U.S.D.C., W.D.N.Y.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25